---

## In re REED.

(District Court, W. D. Oklahoma. April, 1911.)

1. BANKRUPTCY (§ 407*)—GROUNDS FOR REFUSAL OF A DISCHARGE—OBTAINING PROPERTY BY FALSE STATEMENT—"OWNER."

One duly appointed as manager and attorney in fact for the owner in conducting a mercantile business has such authority that a materially false property statement made by him for the purpose of purchasing goods on credit is one made by the owner within Bankr. Act July 1, 1898, c. 541, § 14b (3), as added by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1310), and is ground for refusal of a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*

For other definitions, see Words and Phrases, vol. 6, pp. 5134–5151; vol. 8, p. 7744.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 413*)—OBJECTIONS TO DISCHARGE—EVIDENCE.

It is competent on objections to a bankrupt's discharge to show that a creditor sold goods to the bankrupt in reliance on a written property statement which was false by circumstantial evidence, and that the statement was furnished as a basis for credit, and that shipment followed warrants a finding of such fact.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 413.*]

3. BANKRUPTCY (§ 407*)—DISCHARGE—CREDITORS ENTITLED TO OPPOSE.

A creditor from whom a bankrupt obtained property on credit by a materially false statement in writing, where he has proved his claim, is not precluded from contesting the bankrupt's discharge by the fact that a discharge would not release the bankrupt from such debts.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

4. BANKRUPTCY (§ 408*)—FRAUDULENT CONCEALMENT OF PROPERTY.

That a bankrupt failed to place any valuation on property listed in his schedules and claimed as exempt is not ground for denying a discharge, although the state law places a limit on the value of a homestead exemption, unless it amounts to a fraudulent concealment of property within Bankr. Act July 1, 1898, c. 541, § 29b (1), 30 Stat. 554 (U. S. Comp. St. 1901, p. 3433).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 408.*]

In the matter of Josie L. Reed, bankrupt. On exceptions to special master's findings and report in the matter of bankrupt's application for discharge. Exceptions sustained, and discharge denied.

The following is the opinion and report of B. M. Parmenter, special master:

### Findings of Facts from the Record.

The bankrupt, Josie L. Reed, filed her application for discharge in bankruptcy on the 5th day of January, at the hour of 9 o'clock a. m., 1910, representing that on the 5th day of April, A. D. 1909, she was duly adjudged a bankrupt under the acts of Congress relating to bankruptcy; that she had duly surrendered all of her property and rights of property, and has fully complied with all the requirements of said acts and to the orders of the court touching her bankruptcy. Wherefore she prayed that she be decreed by the court to have a full discharge from all debts provable against her said estate which said bankruptcy acts excepting such debts as were excepted by law from such discharge. Thereafter, to wit, on the 29th day of January, A. D. 1910, Peck & Hills Furniture Company, a corporation, organized, existing, and doing business under and by virtue of the laws of the state of Illinois and having its office and place of business in the city of Chicago, within said state, filed its specifications for objections to the discharge in bankruptcy of the bankrupt. The said objecting creditors allege:

### Specification No. 1.

That it was at the time of the filing of the objections and had been continuously for on or about two years last past a creditor of the bankrupt; that on or about the month of April, 1908, it sold and delivered to the bankrupt at her special instance and request certain goods, wares, and merchandise, amounting to the sum of $2,346.49. That the claim in said amount and for said merchandise was duly proven, filed, and allowed in the bankruptcy proceedings. That there has been paid to said objecting creditor dividends out of the estate of the bankrupt in the sum of $381.22 and no more. That the entire assets of the estate have been distributed pro rata among the several creditors of the estate, and there remains a balance due and unpaid from the bankrupt to the objecting creditor in the sum of $1,965.27. That the said merchandise was obtained from said objecting creditor upon a materially false statement in writing made by the bankrupt to the objecting creditor on the 27th day of March, A. D. 1908, for the purpose of obtaining said goods, wares, and merchandise on credit. A copy of said statement is attached to

the objections filed. That the said statement was materially false, in that the bankrupt listed in said written statement so delivered to said objecting creditor and on which said credit was given, based, and extended by the objecting creditor to the bankrupt, the following described real estate owned by said bankrupt at the time of obtaining said credit, and that it was not exempt from execution, and was not a homestead and was described as follows, to wit: Lots 2, 3, 4, 5, 6, and 7, in block 6, and lots 1, 2, 10, and 11, in block 5, 'in Bay's addition to Eureka Springs, Carroll county, state of Arkansas, together with improvements thereon, said property otherwise described as the north 26 feet of lot 10 in block 5, the west 11 and .65 feet of lots 1 and 2 in block 6, and the south 22½ feet by 70.65 feet out of the west end of lot 6 in block 6, situate in the city of Eureka Springs, county of Carroll and state of Arkansas, according to plat of James W. Ryley and recorded as Bay's survey or Magnetic Forty addition to said city.

That said described property is the same property as mentioned in bankrupt's said statement in writing attached to the specifications for objections and described in said statement as 10 lots and building known as the Magnetic Hotel. Building is four stories, and is 70 by 140, and cost to erect $23,000. That said property is included in the bankrupt's statement in writing to said objector whereby said credit was given and extended. That said statement reads as follows: "Real estate other than homestead, amount, $27,600.00." And said objector charges that it thereby appears that the other real estate, not homestead, nor claimed as exempt being as follows, to wit: One house and two lots in Eureka Springs, Ark., value $600. One house and two lots in Eureka Springs, Ark., value $1,800. One house and two lots in Eureka Springs, Ark., value $1,500. Two farms near Eureka Springs, Ark., with barns, value $700. That under and by virtue of the representations so made it appears from said statement of credit that all of said real estate mentioned in said statement was valued by the bankrupt in the sum of $27,600. That the bankrupt has listed here certain real estate referred to as Magnetic Hotel in schedule B of her assets in said bankruptcy matter and valued at $23,000 as her homestead and exempt from execution, and claims the same as her homestead and as exempt from the operation of the acts of Congress relating to bankruptcy. That the bankrupt filed a claim to said Magnetic Hotel and the land on which it is situated on the 27th day of June, 1909, as being exempt and a homestead, and that said property was set aside by the trustee in bankruptcy to the bankrupt as exempt property. That, when the bankrupt made said false statement in writing to the objecting creditor, she knew that she intended to and did claim said property as exempt and as her homestead and thus intended to defraud and did induce the objecting creditor by fraud to part with the aforementioned and referred to goods, wares, and merchandise on the basis of the aforesaid false statement. That in said written statement so furnished by said bankrupt to said objector on the 27th day of March, 1908, the said bankrupt represents and alleges that all of said real estate heretofore specifically described, and the other real property mentioned in said instrument in writing, which other real estate is more fully described as follows, to wit:  S. E. ¼ of S. E. ¼, section 14, township 20, range 27, 40 acres;  S. E. ¼ of S. W. ¼, section 14, township 20, range 27, 40 acres;  S. W. ¼ of N. E. ¼, section 14, township 20, range 27, 40 acres;  N. E. ¼ of N. W. ¼, section 23, township 20, range 27;  N. E. ¼ of N. E. ¼, section 23, township 20, range 27, 40 acres;  N. W. ¼ of N. W. ¼, section 24, township 20, range 27, 40 acres;  lot 9 in block 25 Clayton's survey, Eureka Springs, Ark., in the county of Carroll and state of Arkansas, was incumbered and mortgaged in the sum of $3,500, when in truth and in fact at the time of making said statement in writing the said hotel property alone was mortgaged in the sum of $3,500, and the other real estate herein was at that time mortgaged in the aggregate sum of $1,734, as is further shown in the bankrupt's schedules A, filed in said bankruptcy matter.

That the bankrupt obtained the aforesaid goods, wares, and merchandise from the objecting creditor on the aforesaid false statement in writing as to mortgage on said land, and that said bankrupt well knew at the time of making said materially false statement in writing as to mortgage on said real estate so owned by her that said statement as to incumbrance on said property was false and untrue, and that the incumbrance and mortgage on said

property was at that time more than given in said written statement, and said statement as to incumbrance was given by said bankrupt to objector for the purpose of deceiving and defrauding this objector. That said materially false statement in writing was willfully and knowingly made by said bankrupt, and that they were so made for the purpose of obtaining said goods, wares, and merchandise from said objecting creditors. That the objecting creditor believed said statements to be true and correct, and relied on the same as being true and correct.

### Specification No. 2.

Under this specification the objecting creditor alleges: That the bankrupt failed to schedule as a part of her assets in schedule B, filed in said bankruptcy proceedings, shares of stock in one Green Lawn Realty Company, which shares of stock were owned by her, and in her possession and under her control at the time of the filing of the petition in bankruptcy in this cause. That said stock was of the value of $3,700 at the time of the filing of the specifications for objections. That said bankrupt willfully, intentionally, and fraudulently failed to schedule the property as assets to be distributed among her creditors, and that said bankrupt has failed, neglected, and refused to turn over said property or any part thereof to the trustee in bankruptcy, and that she now retains said property and the proceeds thereof for her own use and benefit. That the bankrupt made a false oath to her schedule B with reference to the assets owned by her, and which schedule so made and sworn to by her was filed in said bankruptcy proceedings, and that she, the said bankrupt, did make said false oath before B. M. Parmenter, referee in bankruptcy, on the 6th day of May, A. D. 1909. That B. M. Parmenter was at that time a duly authorized officer of the bankruptcy court and empowered by law to administer oaths. That said schedule B, signed and sworn to by said bankrupt, purported to contain a full and complete list of all her estate, both real and personal. That in truth and in fact said schedule B does not contain any of the Green Lawn Realty stock, which was then owned, held, and possessed by said bankrupt. The said objecting creditor alleges that the aforesaid pretended and false statement was willfully, intentionally, and corruptly made by the bankrupt at the time and place stated.

### Specification No. 3.

Herein the objecting creditor alleges: That in the real estate claimed as a homestead and exempt under the law, which said property is scheduled as exempt in bankrupt's schedule B, to wit, lots 2, 3, 4, 5, 6, and 7, in block 6, lots 1, 2, 10, 11, and 12, in block 5, situate in Bay's addition to the city of Eureka Springs, Carroll county, Ark., no value whatever is given to said property in said schedule by the bankrupt, nor is the bankrupt's equity in the same shown or indicated. The valuation of the same is entirely omitted. That in truth and in fact said alleged exempt real estate and improvements thereon, otherwise referred to as Magnetic Hotel, extends over and covers more than one-fourth of an acre of land, and is of the reasonable value of $23,000; and the laws of Arkansas allow out of said property to the said bankrupt the sum of $2,500 and more, leaving a balance in the sum of $20,500 of equity in said property, which said equity bankrupt has secreted and which she withholds from the trustee in bankruptcy and from her creditors, and which equity she has failed, neglected, and refused, and still fails, neglects, and refuses, to turn over to the trustee in bankruptcy for distribution among her creditors as required by law, and that the claim of exemptions is excessive and contrary to the laws of the said state of Arkansas, where said property is situated. That thereafter, on the 17th day of February, 1910, Hon. John H. Cotteral, judge of the above-entitled court, ordered that the issues made by the application of the bankrupt for a discharge in bankruptcy and the specifications of objections thereto filed be referred to me, the undersigned, as special master, to take testimony and make report to the court with findings of facts and recommendations in favor of or against the discharge in bankruptcy. That said order of reference with the application for a discharge and specifications for objections filed thereto were received by the special master, at his office at Lawton, Okl., February 18, 1910. That thereafter, to wit, on the 8th day of March, A. D. 1910, the bankrupt filed

her answer to the objections made and entered to her discharge by Peck & Hills Furniture Company. By said answer to the specification for objections to her discharge, the bankrupt denies each and every, all, and singular the alleged statements and charges in said specifications for objections to her discharge contained, excepting such as are by the bankrupt specifically admitted, explained, or otherwise accounted for.

The bankrupt alleges that she is wholly uninformed as to what goods or the value thereof were by the objectors sold or furnished to the business conducted in her name in the city of Lawton, Okl., and therefore neither admits nor denies the same, but leaves said objecting creditors to make its proof. Neither has she any personal information or knowledge as to the amount of money received by the objecting creditors through and by reason of the aforesaid bankruptcy proceedings. Said bankrupt denies that the objecting creditors sold or furnished to her upon any written or oral statement by her made or made by any other person with her knowledge, consent, privity, or procurement, and denies that she ever authorized any person to make or knew of any person making any false or fraudulent statement in reference to the business conducted in her name either for the purpose of obtaining goods or credit or for any other purpose whatever, and expressly denies that she knew or was informed in any manner whatever of the making or delivering of the alleged materially false statement in writing.

The bankrupt admits that she furnished means to M. G. Hicks, her son, and authorized him to commence and carry on in her name a general furniture business in the city of Lawton, Okl., but she expressly denies that she ever gave him any authority to make any fraudulent statement in reference to the business and the conducting thereof. She denies that she furnished him any statement or schedule of the property by her owned and possessed, and denies that she at any time, or in any manner, authorized him to make any false, fraudulent, or untrue statement in reference to property by her claimed as a homestead, or to make any statement in reference thereto, excepting truthful statements in the ordinary conduct of said business.

And she further alleges that, if said Hicks made any other statement, it was made, as she verily believes, by inadvertence and mistake and in ignorance of what the true facts were, and denies that her said agent made to the said objectors, or to any other person, any false or fraudulent statement in reference to property by her possessed, or the character thereof for any false or fraudulent purpose, or with intent to mislead or deceive said objectors or any other person, or thereby wrongfully to obtain any property or credit from any person whomsoever.

With reference to the shares of stock in the Green Lawn Realty Company, the bankrupt alleges that long before the filing of the petition in bankruptcy said shares of stock had been transferred and assigned to one M. Koehler for the sum of $500, and had been by said M. Koehler surrendered to the said corporation and new stock issued thereon in his own name, and he thereafter sold and assigned such new stock to one Chas. A. Reed, who purchased the same in good faith, as the bankrupt is informed and believes, and that he is still the lawful owner and holder of said stock, and also such owner long before and at the time your petitioner filed and verified her schedules of property herein, and that said shares of stock in said Green Lawn Realty Company were not omitted from her said schedules of property for any false or fraudulent purpose or with the intent to withhold any of her property from her creditors, but solely and only for the reason that she did not own the same or therein have any right to, or control over, the same, or any part thereof, and that all of the said transfers and transactions in reference to said stock were by your petitioner fully made known and disclosed at the first meeting of the creditors in said bankruptcy proceedings. That the trustee in said bankruptcy proceedings was fully informed in the premises and with rights thereto and could have recovered as a part of the assets of the bankrupt estate any right or interest the bankrupt had in said shares of stock if he had elected so to do and had cause for so doing, but the bankrupt alleges that the trustee acting for and on behalf of said creditors did not pursue or seek to recover said shares of stock or any right or interest therein solely because said trustee was advised by his counsel that the bankrupt had no right or interest therein, and that the same did not belong to the estate of the bankrupt and could not be recovered for and on behalf of the same.

The bankrupt admits that lots 2, 3, 4. 5, 6, and 7, in block 6, and lots 1, 2, 10, 11, and 12, in block 5, in Bay's addition to the city of Eureka Springs. Ark., together with the building situate thereon, were by the trustee in bankruptcy set aside and assigned to the bankrupt as and for her homestead, but she denies that she specifically claimed and demanded the same to be assigned to her and for her homestead, but alleges and charges that fact to be that she claimed and demanded no more of said lots than would constitute one-fourth of an acre; and further alleges and shows that the balance of said land and premises were by her turned over and delivered to said trustee in bankruptcy and was by him sold back to the bankrupt at and for the price and consideration of $500, which was more than a fair value for the same. and for that reason and none other the whole of said premises were by the court assigned and set over to the bankrupt as her homestead after said facts had been made known to the referee; that bankrupt denies that the premises are of the value of $23,000, or any other greater value than the sum of $2.500. and the mortgage and incumbrances against the same. The bankrupt denies that she has secreted or withheld from the trustee any property of any value whatever, or of any kind or nature, but she alleges and charges the facts to be that she has surrendered and turned over to the trustee in said bankruptcy proceedings all the property belonging to her of every kind and nature, except such as was exempt by law from the claims of creditors.

Bankrupt further alleges that never at any time has she done or authorized or permitted to be done any act or made any statement knowingly intending thereby to wrongfully or unlawfully obtain any credit or property from any person whomsoever.

Thereafter the special master caused notices to be issued and served upon the bankrupt, attorney for bankrupt, objecting creditors and attorney for objecting creditors, that hearing on issues as framed in the above-entitled matter would be had at the office of the special master on Thursday, March 10, 1910, and thereafter on said date there were present at the office of the special master, the bankrupt, and attorneys for the bankrupt, J. F. Steck, Esq., and attorneys for objecting creditor, Gustave A. Erixon, Esq., and L. M. Gensman, Esq., and H. A. Smith, Esq., who had theretofore been one of the attorneys of record for the objecting creditors and orally announced to the special master his withdrawal as attorney from said cause. At the request of parties litigant, Miss Belle V. McKaughan was by the special master regularly appointed as stenographer to take down in shorthand and transcribe into long hand a true, full, correct, and complete record of the proceedings herein to the best of her skill, knowledge, and ability, and to so do she was by the special master duly cautioned and sworn. On said 10th day of March, A. D. 1910, the hearing of said cause, by consent of parties, was continued to the 12th day of March, A. D. 1910. On the 12th day of March, A. D. 1910. evidence was submitted in the case, and from the records of the same the special master makes the following findings of facts:

### Findings of Facts from the Evidence.

That the Peck & Hills Furniture Company is a corporation, and was at all times in the bankruptcy proceedings herein referred to a creditor of Josie L. Reed, bankrupt, with its claim duly proven, filed, and allowed in said bankruptcy proceedings, and that there yet remains a balance due and unpaid on said claim. That the estate in bankruptcy of Josie L. Reed has been fully administered upon by the referee in bankruptcy before whom the same was pending. That said indebtedness due to the objecting creditor by Josie L. Reed, the bankrupt, was for and on account of goods, wares, and merchandise sold on credit and delivered by the objecting creditor to the bankrupt on or about the month of April, 1908. That at all times in these proceedings mentioned and referred to, after the establishing of a furniture business in the city of Lawton, Comanche county, Okl., by Josie L. Reed, the bankrupt, up to the time of the filing of the petition in bankruptcy in this case, M. G. Hicks was the duly appointed and acting agent for and on behalf of Josie L. Reed, the bankrupt, to act for and in her place, name, and stead, and to manage, conduct, and operate her general furniture and undertaking business in the city of Lawton, Comanche county, Okl. That the authority creating said Hicks agent for the bankrupt was in writing.

I further find: That the said M. G. Hicks, as manager and attorney in

fact for the bankrupt, did on or about the 27th day of March, 1908, make to the objecting creditor herein, Peck & Hills Furniture Company, a corporation, a materially false statement in writing. That the bankrupt, Josie L. Reed, at the time of the making of said statement, had no knowledge of the same nor what it contained, nor was she by said Hicks consulted with reference thereto. That said statement was false, in this: That it omitted and neglected to set out the property occupied and claimed as a homestead. That at the time of the making of said statement in writing the bankrupt resided and lived with her husband upon and in the property known as the Magnetic Hotel, and occupied the same as her homestead at that time, and also used the same for hotel purposes, and that neither the bankrupt nor her husband had any other home. That the property valued at $23,000 in said statement is the same and identical property as the Magnetic Springs Hotel property and as the property asked for and claimed to be exempt by the bankrupt in her schedules filed in the bankruptcy proceedings, and that all or a greater portion of it was set aside to the bankrupt as exempt by the trustee in bankruptcy in the bankruptcy proceedings. That said statement was made for the purpose of obtaining goods, wares, and merchandise on credit. That the same was materially false, in this: That it represented incumbrances on real estate to have been $3,500, whereas the incumbrance on real estate was $1,734 in addition to the $3,500 listed in the statement.

I further find said statement to be materially false, in that the real estate other than homestead is given a market value of $27,600, whereas the value of the real estate, other than homestead, I find to be $4,600. I find with reference to the false statement in regard to the homestead that it was made false intentionally by M. G. Hicks. There is no evidence on behalf of the objector that they relied upon said false statement in extending credit to the bankrupt; or that they shipped the merchandise testified to upon the strength of said false statement.

## Specification No. 2.

In addition to the above and foregoing findings of facts and with particular reference to the findings of facts with reference to specification No. 2, the special master finds that the bankrupt failed to schedule as a part of her assets shares of stock in the Green Lawn Realty Company, and that she has failed and neglected to turn over to the trustee in bankruptcy any part or portion of said shares of stock; that the bankrupt filed in the bankruptcy proceedings her schedule of assets and liabilities, and that the same was sworn to before B. M. Parmenter, referee in bankruptcy, on the 6th day of May, A. D. 1909; that schedule B, being part and parcel of the schedules filed by the bankrupt as hereinbefore referred to, purports to contain a full and complete list of the bankrupt's estate, both real and personal. The special master finds nothing to support the allegations contained in specification No. 2 excepting as herein set out.

## Specification No. 3.

With particular reference to the allegations made under specification No. 3, the special master finds as facts that lots 2, 3, 4, 5, 6, and 7, in block 6, and lots 1, 2, 10, 11, and 12, in block 5, Bay's addition to the city of Eureka Springs, Carroll county, Ark., are and were listed and set out by the bankrupt in her schedule B, and that the same were claimed as exempt, and that they are the same and identical lots as before set aside by the trustee in bankruptcy to the bankrupt as exempt with the exception of lot 12 in block 5; that no value whatever is given to said property in the bankrupt's schedules, nor is her equity in the same shown or indicated. The special master further finds that on or about the 28th day of December, 1909, Merrit J. Glass, the duly elected, qualified, and acting trustee in the bankruptcy proceedings of Josie L. Reed, bankrupt, filed with the referee in said cause a report and statement that from an examination of said homestead as claimed by the bankrupt he found that certain portions of lots claimed were in excess of the amount of land allowed by the laws of Arkansas, where said homestead was located, and that a compromise with said bankrupt the bankrupt paid to him, the trustee, the consideration of $500 as follows: $299 in cash and the assignment of the dividends on the claims of C. A. Reed and Mrs. Mack, for a sufficient amount to make the entire consideration $500.

With reference to lot 12, in block 5, herein referred to, there is no evidence that enables the special master to make any findings with regard thereto as to its value, or whether it was a part of the land mentioned and referred to by the trustee in the compromise. I further find that the bankrupt exhibited and disclosed to the trustee all of the property belonging to her estate in bankruptcy.

## Conclusions of Law.

Having found that the applicant for a discharge knew nothing with reference to the acts of her agent, M. G. Hicks, wherein he made a materially false statement in writing for the purpose of obtaining merchandise on credit from Peck & Hills Furniture Company, the question arises, To what extent do the wrongful torts of the agent, in this case M. G. Hicks, prejudice the rights of the applicant, the principal, when the principal makes application for a discharge in bankruptcy? "A statement made by an agent with the bankrupt's authority is sufficient. * * * but it is not sufficient when not made with the bankrupt's authority." 2 Remington on Bankruptcy, p. 1542, par. 2563. An examination of the authorities cited discloses some confusion as to whether the doctrine is sound. "The bankrupt, Riess, seems to have had no share in making the later 'statement' relied upon by the objecting creditors, and they do not claim that he was personally concerned in the alleged fraud other than as a partner of Dresser. It is true that upon principles of agency Riess is liable civiliter for the fraudulent acts of Dresser which were clearly within the scope of partnership business and for the firm's benefit." These considerations do not affect the right of an innocent partner to a discharge. In re Dresser & Co. (D. C.) 13 Am. Bankr. Rep. 637, 144 Fed. 318. This case was carried by petition for review to the Circuit Court of Appeals for the Second Circuit and there affirmed. S. C. 16 Am. Bankr. Rep. 561, 146 Fed. 383, 76 C. C. A. 655. "A materially false statement in writing made by a partner in the ordinary course of business of the partnership in buying merchandise for the purpose of obtaining goods on credit and by means of which they were so obtained by the firm is not ground for refusing a discharge in bankruptcy to another partner who did not participate in the wrongful act and had no knowledge of it." Hardie v. Swafford Bros.' Dry Goods Co. (5th Circuit) 21 Am Bankr. Rep. 457, 165 Fed. 588, 91 C. C. A. 426, 20 L. R. A. (N. S.) 785. In this case a dissenting opinion is filed. To the same effect is In re Schachter (D. C., N. Y.) 22 Am. Bankr. Rep. 389, 170 Fed. 683. I therefore come to the conclusion that the courts that have passed upon the proposition of the effect of material false statements made for the purpose of obtaining credit by an agent upon the principal's application for a discharge hold that the principal is not to be denied a discharge because of the false representations made by the agent, if the principal had no knowledge of the making of the statements and did not ratify them or have anything to do with them.

## Principal's Liabilities for Agent's Torts.

"If the false statement was not relied on in parting with the property, the discharge will not be barred." 2 Remington on Bankruptcy, p. 1544, par. 2569; In re Shaffer (D. C., W. Va.) 22 Am. Bankr. Rep. 147, 169 Fed. 726. I have found that there is no evidence showing that the objecting creditor relied upon the false statement.

## Who Can Oppose a Discharge.

"It is only parties in interest that may oppose a discharge. The specification wholly fails to show wherein the Farewell Company is interested in opposing this discharge." In re Servis (D. C., Iowa) 15 Am. Bankr. Rep. 271, 140 Fed. 222. The objection "should also allege facts showing that the parties filing the specification will be affected by the discharge and is therefore interested in defeating the same. The specification in question wholly fails in this respect, but expressly alleges that the goods were obtained from the Farewell Company upon false pretenses and by false representations. If this be true, the discharge will not release the bankrupt from the liability created thereby. The Farewell Company, therefore, upon the allegations of the specifications, can have no interest in opposing the discharge." Id. So

in the case at bar, if the goods were obtained by false pretenses or a materially false statement in writing, the objecting creditor in this case would not be affected by a discharge in baukruptcy; hence they have no interest in opposing the discharge of the bankrupt.

"Any party in interest and only such may oppose the bankrupt's discharge." 2 Remington on Bankruptcy, p. 1488, par. 2459. "To be a party in interest within the purview of the provisions, he must have a pecuniary interest." Id. par. 2460. "A nondischargeable claim is not sufficient." Id. "A discharge in bankruptcy shall release a bankrupt from all of his provable debts excepting such as * * * are judgments in actions for fraud or obtaining property by false pretenses or false representations." Section 17—2, Bankr. Act 1898. "It is easy enough to see that the particular creditor harmed by the false representations should have his claim excepted from the obligations of the discharge." 2 Remington on Bankruptcy, p. 1541, par. 2559.

"A discharge granted in a bankruptcy proceeding instituted since the amendment of 1903 to sections 14 and 17 does not release the bankrupt from liabilities to one who in reliance upon his oral false representations as to his solvency had been induced to sell him goods upon credit." Katzenstein v. Reid Murdock, 16 Am. Bankr. Rep. 740, 41 Tex. Civ. App. 106, 91 S. W. 360. So it is apparent that if the allegation made by the objecting creditor be true that they can, at any time, institute suit against the bankrupt for any amount that may be due to them as set out in the petition. This being true, it is immaterial to the objecting creditor whether a discharge in bankruptcy be granted or not. It does not affect the claim or the rights of the objecting creditor for the reasons herein set out.

### Specification No. 1.

(A) The evidence does not show that the false statement was relied upon in the extending of credit and the delivering of the merchandise.

(B) That this particular creditor has no interest in opposing the discharge because its debt, if its allegations be true, is not barred by the discharge.

(C) The false representations made by the agent, M. G. Hicks, the bankrupt is not bound by, and therefore cannot be denied a discharge because of them.

### Specification No. 2.

There being no finding that the shares of stock in the Green Lawn Realty Company were owned by or in the possession of the bankrupt, or under her control at the time of the filing of the petition in bankruptcy, nor at any other time during the bankruptcy proceedings, this specification necessarily falls for want of proof.

### Specification No. 3.

This specification of objection alleges that the laws of the state of Arkansas allow out of the property of the bankrupt referred to the sum of $2,500 as exempt, and no more. and that the bankrupt failed to give the valuation of the property claimed by her as exempt when she listed the same in her schedule attached to the petition in bankruptcy, and that the property was of the reasonable market value of $23,000, and therefore the bankrupt secreted and withheld and now withholds from the trustee in bankruptcy and from her creditors an equity in said property to the extent of $20,500, and that this amount she refuses and fails to turn over to the trustee in bankruptcy; that this property is claimed by the bankrupt as exempt, and that the claim is excessive and contrary to the laws of the state of Arkansas. As I understand this specification, an issue is pleaded which depends for its materiality upon the laws of the state of Arkansas, but nowhere have the laws of the state of Arkansas been proved in these proceedings. "Where a party asks either to recover or defend under a foreign law, such law must be pleaded and proved like any other fact." 9 P. & P. p. 542.

In the case at bar the statute was pleaded, but no proof offered to sustain the pleading. Hence this specification fails. Neither is there any competent evidence before the special master that established a reasonable market value of the land and lots referred to. But two witnesses were examined with reference to the value of the land, and, if that examination established no other proposition, it thoroughly established the proposition that neither one

of them had knowledge of the reasonable market value of real estate in Eureka Springs, Ark. Therefore I come to the conclusion that there is a failure of proof as to the reasonable market value of the property referred to in specification No. 3, and without competent proof upon this subject no conclusion could be reached as to the value of the property or the equity, if any, that the bankrupt secretes or withholds from the trustee in bankruptcy. It is charged that the valuation of the property is entirely omitted from the schedules. "Nor can he be charged with concealing the stock simply because he has undervalued it, the remedy for this being by objection to his exemption claim. But the fact that it was undervalued as well as unnamed is a circumstance of more or less weight on the question of concealment, if there is further evidence which bears it out." In re Semmel (D. C., Pa.) 9 Am. Bankr. Rep. 351, 118 Fed. 487. "The mere omission from the schedules is not per se a concealment. The omission must be intentional. Thus the mere omission of even fraudulently transferring property is not per se concealment of it." Remington on Bankruptcy, p. 1508, par. 2504.

In the case at bar the special master has found that the property was scheduled, but its value is omitted. The fact that it is scheduled negatives any presumption that there was a fraudulent intent to conceal, unless it is maintained that the omission of the value is an attempt to avoid or overreach the exemption laws of Arkansas which possibly puts a value limitation on homestead exemptions. "The concealment must 'be done knowingly and fraudulently." Remington on Bankruptcy, p. 1503, par. 2488. "Intent to conceal is the most important element in charge of concealment of assets." Remington on Bankruptcy, p. 1504, par. 2489. "Mere undervaluing of scheduled assets is not per se a concealment, but is evidence to be taken into account in arriving at the intent." Remington on Bankruptcy, p. 1505, par. 2495. "The concealment must be concealment from the trustee." Remington on Bankruptcy, p. 1506, par. 2499. "Concealment before the appointment of a trustee is ineffectual to bar the discharge." Remington on Bankruptcy, p. 1506, par. 2500. "If no trustee be appointed at all, this ground of opposition will not lie." Id.

In the case at bar the special master has found that certain portions of lots claimed as exempt were in excess of the amount of land allowed by the laws of Arkansas, where said homestead was located as per the results of an investigation made by the trustee in bankruptcy, and I further found that the bankrupt exhibited and disclosed to the trustee all of the property belonging to her estate in bankruptcy. In the case at bar all of the records and proceedings in the bankruptcy proceedings before the referee were introduced in evidence, and from all of this evidence the special master had no hesitancy in finding that the bankrupt made a full and complete disclosure of all this property, its boundary, and its condition and its use. The question under this specification is not whether the bankrupt made a false oath in connection with her schedules, but whether, after the appointment of a trustee, she concealed from the trustee in bankruptcy certain valuable property willfully, corruptly, and intentionally? Neither is it charged that the amount measured by lots, blocks, or fractional parts of an acre were excessive, but simply that they were undervalued, and that by undervaluing, before the trustee was appointed, said property she thereby attempted to secrete and withhold from the trustee a certain equity that belonged to the trustee in bankruptcy.

The special master therefore holds that specification No. 3 fails, in this:

(A) That there is a failure of competent evidence to establish a reasonable market value of the property in issue.

(B) That there is a failure of proof as to the laws of Arkansas, therefore the special master is unable to ascertain whether under the laws pleaded the exemption is excessive.

(C) That the bankrupt has not knowingly and fraudulently concealed from the trustee any part or portion of her property belonging to the bankrupt estate.

Wherefore, premises considered, the special master respectfully recommends that the bankrupt, Josie L. Reed, be decreed by the court to have a full discharge from all debts provable against her estate under the bankruptcy acts

191 F.—59

except such debts as are excepted by law from such discharge. That the costs of this proceeding in the sum of $119.40 be taxed against the objecting creditors, Peck & Hills Furniture Company, an itemized statement of the costs incurred is hereto attached, marked "Exhibit A," and made a part hereof, the same showing the amount of money advanced by each party to the special master.

Steck & Key, for bankrupt.

Gustave A. Erixon, for objecting creditor.

COTTERAL, District Judge. The objections of Peck & Hills Furniture Company to the discharge were (1) obtaining merchandise from this creditor upon a materially false statement in writing; (2) omission to include in schedule of assets stock in the Green Lawn Realty Company; and (3) scheduling without valuation certain town lots in Eureka Springs, Ark., as exempt, in excess of the area and valuation permitted by law, secretion of the "equity" thereon from the creditors, and failure and refusal to turn same over to the trustee. The exceptions to the report of the master definitely relate only to the first and third grounds of objections.

As to the first ground of exception, the questions presented are whether the master erred in deciding that there was no evidence to the effect that this creditor relied upon the false statement, and that the bankrupt was not responsible for the statement. With reference to the homestead, the exception taken is that the master erred in finding that the bankrupt was entitled to the real estate known as Magnetic Springs Hotel, as an exempt homestead, the evidence showing that it was used as a hotel, and not as a home or residence for the personal use of the bankrupt and her family.

[1] The master found with the objector as to the falsity of the property statement, but held the bankrupt was not chargeable with it, and, further, that the proof failed to show that it was relied upon by the objector in furnishing the merchandise. In the opinion of this court the scope of the authority of the agent who made the statement under the power of attorney and in view of all the circumstances was sufficient to charge the bankrupt with responsibility for the statement.

[2] It was not shown by direct testimony that the objector parted with the merchandise in reliance upon it. No witness testified to the fact. But it was competent to establish the fact by circumstantial evidence. The statement was asked and furnished as a basis for credit, and the relation between the representation and the shipment of the merchandise was so close that the conclusion is only reasonable that the creditor parted with the merchandise on the strength of the representation. The evidence amply sustains the finding that such was the fact, and the fact ought to be so found in this case where there is an absence of any showing to the contrary. The holding that there was no evidence that the creditor relied upon the statement overlooks the probative force and weight of the evidence introduced. Reliance on the statement was sufficiently proven.

[3] The contention that this creditor had no interest in defeating the discharge is not tenable. It is true the bankrupt is not entitled to be discharged from debts fraudulently contracted, but a creditor who

has proved a claim, and from whom property has been obtained by a materially false property statement in writing, is entitled to contest the discharge, and to prevail with this objection thereto if it is established by the proof. The exceptions are well taken to the report of the master on this ground, and will be sustained.

With reference to the controversy as to the claim of exemption, it appears in the first place that the bankrupt scheduled the real estate in Eureka Springs as exempt, but omitted to give it a valuation. The state laws which govern as to the exemption are those of the state in which the bankrupt had her domicile for the six months or the greater portion thereof immediately preceding the filing of the petition in bankruptcy. In this case, the laws of Arkansas appear to be applicable. However, it is not necessary to plead these laws as the federal courts take judicial knowledge of the laws of all of the states. But the question involved on the contest over the discharge was not what homestead in respect of area or valuation the bankrupt was entitled to have awarded to her. That controversy was one to be dealt with and disposed of on exceptions to the report of the trustee. The question involved in this proceeding was whether the schedule was falsely made, and there was a secretion of property from the trustee. In other words, whether an offense was committed under section 29b of the bankruptcy law. The exception does not clearly present the question. Waiving this, however, the evidence, in the view of the court, does not sustain the objection originally taken. It was not sufficiently established that the bankrupt intentionally made a false oath with respect to the exemption or intentionally withheld or secreted the property from the trustee. The conclusion of the master on this branch of the issues was correct, and the exceptions thereto are overruled.

It follows from the foregoing that the discharge should be denied. It will be so ordered.