sions of the section of the Code in question. Butler v. Hill, 1 Baxt. (Tenn.) 375; Polk v. Foster, 7 Baxt. (Tenn.) 98, 100; Williamson v. Steele, 3 Lea (Tenn.) 527, 529, 31 Am. Rep. 652; Edwards v. Thompson, supra, 85 Tenn. at page 721, 4 S. W. 913, 4 Am. St. Rep. 807; Layman v. Denton (Tenn. Ch. App.) 42 S. W. 153. It therefore follows that, not being exempt property, and being property which the bankrupt could have transferred at the time the petition was filed and the adjudication in bankruptcy made, title thereto must be held to have passed to the trustee under the provisions of section 70 of the Bankrupt Act.

Finding therefore no error in the order of the Referee overruling the bankrupt's exception to the trustee's report refusing to set aside to the bankrupt as exempt his one-half interest in this growing crop, the order of the Referee will be in all things confirmed, and the bankrupt's petition to review dismissed at his costs.

In re SCHWARTZ & CO.

(District Court, S. D. New York. September, 1912.)

1. BANKRUPTCY (§ 407*)—DISCHARGE—CREDIT—FALSE STATEMENT—STATEMENT SIGNED BY MANAGING AGENT OF PARTNERSHIP.

Where the manager of a bankrupt firm, acting within the scope of his authority, signed a false statement of the firm's assets and liabilities and delivered the same to a commercial agency and creditors, to obtain credit, such statement was available to bar a discharge of the partners.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

2. BANKRUPTCY (§ 407*)—PARTNERSHIP—DISCHARGE—FALSE STATEMENTS.

Where the managing agent of a bankrupt firm, acting within the scope of his authority, made a false statement in writing of the bankrupt firm's assets and liabilities, it was conclusive against the right of one of the partners to a discharge, though she was an old lady who took no part in the management of the business, but intrusted her interest to her son, who acted as the firm's manager.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

3. BANKRUPTCY (§ 408*)—BANKRUPT FIRM—CONCEALMENT OF ASSETS—PRESUMPTION OF SHRINKAGE.

Where statements of the financial condition of a bankrupt firm were false and a large part of the property and assets alleged to have been owned by the firm never in fact existed, the usual presumptions arising from a large shrinkage or disappearance of assets within a short period could not avail.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. § 408.*]

4. BANKRUPTCY (§ 407*)—DISCHARGE—REFUSAL TO ANSWER QUESTIONS.

Where a bankrupt on his examination refused to answer material questions, relying on privilege, such election was sufficient to bar his discharge, though he subsequently answered the questions on the hearing of specifications of objections to his discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. BANKRUPTCY (§ 408*)—DISCHARGE—GROUNDS—FALSE OATH.

Where bankrupts scheduled as a creditor the estate of the deceased husband of one of the members of the firm to enable such estate to share in the dividends, they were guilty of knowingly and fraudulently making a false oath which was sufficient to bar their discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. § 408.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Schwartz & Co. On a motion to confirm a referee's report recommending that the discharge be denied. Report confirmed, and discharge denied.

The following is the report of Referee Dexter:

I find and report the facts as follows:

On November 10, 1910, a petition in involuntary bankruptcy was filed by G. Reiss & Bro. and others against Augusta Schwartz and Emanuel M. Schwartz, individually and as members of the firm of A. Schwartz & Co.. and Clarence S. Houghton, Esq., was appointed receiver. Adjudication was ordered on consent of the bankrupts on November 25, 1910. Schedules were filed January 3, 1911, and at a first meeting of creditors held January 30, 1911, Mr. Houghton was elected trustee.

Objections to the bankrupts' discharge were filed by Lewis Frank & Sons, creditors, containing 37 specifications charging various offenses.

It is unnecessary to consider them seriatim. Nine specifications were abandoned (Nos. 1, 14, 15, 18, 21, 22, 28, 29, 30). The remaining specifications group themselves in five classes:

(1) Obtaining money or property on credit from Lewis Frank & Sons and sundry others upon a false written statement (Nos. 2, 3, 4).

(2) Concealing assets in failing to account for the deficit between their assets and liabilities (Nos. 5 to 11, inclusive).

(3) Refusal to answer certain material questions approved by the court (No. 16).

(4) False oath in relation to the proceedings in bankruptcy (Nos. 17, 19, 20, 23, 31, 32, 33).

(5) Destruction of certain books of account (No. 24) and failure to keep proper books (Nos. 25, 26, 27).

The bankrupts were a mother and son engaged in the business of manufacturing shirts under the name of "Criterion Shirt Company, A. Schwartz & Co., proprietors." The mother was an old lady, and took no part in the management. She intrusted her interests entirely first to her husband, and, on his death, to another son, Samuel D. Schwartz, who died since these proceedings were begun. The mother and son lived together and paid their joint expenses by withdrawals from the business. Samuel, though not a partner in name, was practically so in fact. He signed checks, contracts, leases, and other papers in the name of the firm, frequently signing his brother's name, E. M. Schwartz, without any indication to show that he did so per procuration. He was the manager of the business, opened the mail, attended to the correspondence, checked credits, had charge of the manufacturing, and generally all "inside" business. He had an indeterminate share of the profits for his compensation. He was regarded by his mother as her special representative and silent partner (specifications, pp. 31, 32).

The schedules verified by Augusta and Emanuel Schwartz set forth assets of $10,755 and liabilities of $40,111. Emanuel Schwartz had no individual liabilities or assets. Augusta Schwartz had liabilities of $826, and assets consisting of furniture claimed to be exempt for $285.

### 1. False Statements.

[1] Five statements purporting to show the financial condition of A. Schwartz & Co. were shown to have been issued in the name of the firm and

to have been signed in the firm name. The bankrupt Emanuel Schwartz denied that he had signed these statements or had authorized any one to do so. At his first examination under section 21a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430]) before the commissioner he refused to answer any questions concerning statements or in whose handwriting they were on the ground that his answers might incriminate him. At that time his brother Samuel was living. Subsequently, after his brother's death, he testified that the statements were in his brother's handwriting, and were signed by his brother in the bankrupts' name, without authority and without their knowledge. I have no doubt from the testimony that Samuel Schwartz did sign and issue these statements, and that he did so within the scope of his authority as agent and manager for the firm. It is unnecessary to consider the effect of these statements given to Bradstreets or other creditors, as it is in evidence that the statement (Exhibit G) was delivered directly to Lewis Frank & Sons by Emanuel Schwartz for the purpose of obtaining credit, and that his firm obtained merchandise on credit from Frank to the amount of $187.80 (page 106). This statement showed a net worth of over $28,000, according to inventory of July 15, 1910. The bankrupt admitted it to be absolutely false (page 20), and it was materially false as a matter of fact. The merchandise was overvalued. The outstanding accounts had been hypothecated, and there was no inventory taken on July 15, 1910, as there had been a fire and the goods were destroyed or badly injured.

[2] The bankrupts should be held liable for the act of their agent, especially in view of the participation of the bankrupt Emanuel in the Frank transaction. Bradner v. Strang, 89 N. Y. 300, affirmed 114 U. S. 555, 5 Sup. Ct. 1038, 29 L. Ed. 248; In re Reed (D. C. Okl.) 26 Am. Bankr. Rep. 286, 191 Fed. 920; In re Berry (D. C. N. Y.) 15 Am. Bankr. Rep. 360, 362, 146 Fed. 625, 77 C. C. A. 161.

I do not think the rule announced in Re Dresser (D. C. N. Y.) 13 Am. Bankr. Rep. 616, 144 Fed. 318, affirmed 16 Am. Bankr. Rep. 561, 146 Fed. 383, 76 C. C. A. 655, and in Hardie v. Swafford (C. C. A. Fifth Cir.) 21 Am. Bankr. Rep. 457, 165 Fed. 588, 91 C. C. A. 426, 20 L. R. A. (N. S.) 785, is at variance with the foregoing conclusion.

In those cases an innocent partner was granted his discharge which was denied to the other partner who had made a false statement. Those cases were peculiar in their facts, and the equities were strongly in favor of the innocent partner. No such facts appear here, for Emanuel himself actively participated in the fraud and shared in the proceeds.

I find and report that specification No. 4 is sustained.

## 2. Concealment of Assets.

[3] There is no satisfactory evidence showing that the bankrupts have actually concealed assets. The usual presumptions arising from a large shrinkage or disappearance of assets within a short period cannot avail here, for the reason that the major premise of an actual net worth at a preceding date is wanting. It is shown that the statements of financial condition were false. Hence the assets, based on that presumption, have not disappeared, for they never in fact existed.

Various losses and expenses stated in the evidence might account for the shrinkage, but at all events the evidence is not sufficient to sustain the specifications, Nos. 5 to 11, inclusive.

## 3. Refusal to Answer.

[4] On the examination under section 21a the bankrupt refused to answer certain material facts as to the signature on the financial statements and the authority of Samuel Schwartz to sign the firm name on the ground that it would incriminate him. The questions were material and the bankrupt should have answered. Instead of answering, he asserted his privilege. He therefore made an election which will bar his discharge. In re Dresser (D. C. N. Y.) 13 Am. Bankr. Rep. 616, 636, 144 Fed. 318, affirmed 16 Am. Bankr. Rep. 561, 146 Fed. 383, 76 C. C. A. 655.

It is immaterial that subsequently he answered the questions upon the hear-

Ing on specifications. In the meantime Samuel had died, and it was safer then for the bankrupt to place the blame on his deceased brother, who could not be called by the creditors to contradict him. In re Weinreb (C. C. A. Second Cir.) 18 Am. Bankr. Rep. 387, 153 Fed. 363, 82 C. C. A. 439.

I find and report that specification 16 is sustained.

### 4. False Oaths.

[5] Various misstatements in the testimony of the bankrupts are made the basis of charges that they have knowingly and fraudulently made false oaths in this proceeding. The only specification under this head of sufficient definiteness to discuss is No. 17.

The estate of David Schwartz appears as a creditor in the schedules in the amount of $4,300. The only basis for such a claim arises out of the payment of certain life insurance policies to the bankrupt Augusta Schwartz, the widow of David, in the year 1909. Some of this money appears to have been invested by the widow in the business. If so, it should be deemed to have been an investment by the widow in her partnership business, and postponed to the claims of other creditors. It could not, in any event, be owing to the estate of David Schwartz, for the moneys were paid direct to the widow, as such. There appears to have been a will, but it was not probated, and seems to have been destroyed by the widow.

I think that this claim was improperly scheduled with intent to enable Augusta Schwartz to share in any dividend, and that it was not a bona fide indebtedness of the firm. I find and report that specification No. 17 is sustained.

### 5. Destruction of Books, etc.

There is no evidence tending to show that books and records were destroyed with fraudulent intent, or that the firm failed to keep the usual and proper books of accounts.

I find that these specifications Nos. 25, 26, and 27 are not sustained.

### Conclusions.

For the reasons above assigned I recommend that the discharge of Augusta Schwartz and Emanuel Schwartz should be denied.

Harry L. Herzog, of New York City, for objecting creditor.
Reiss & Reiss, of New York City, for bankrupts.

HOUGH, District Judge. On the notice of motion filed herewith report confirmed; discharge denied on Mr. Dexter's opinion.

---

## In re LIPMAN.

### (District Court, D. New Jersey. December 21, 1912.)

1. BANKRUPTCY (§ 116*)—BANKRUPT ACT—COLLECTION OF ASSETS—STATUTES —CONSTRUCTION.

Bankruptcy Act July 1, 1898, c. 541, § 23b, 30 Stat. 552 (U. S. Comp. St. 1901, p. 3431), limiting the jurisdiction of the bankruptcy court over controversies relating to the collection, etc., of bankrupts' estates referred to in section 2, cl. 7, relates only to suits brought by the trustee, and does not restrict the right of receivers or trustees to maintain or defend their possession of goods seized as those of the bankrupt in the bankruptcy court.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 116.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes