## In re LUSTGARTEN.

(Circuit Court of Appeals, Second Circuit. March 26, 1923.)

### No. 161.

1. **Bankruptcy ☞407(5)—Report to bank not ground for refusing discharge.**
   Where report to bank of bankrupt's financial condition was not acted on by his obtaining a loan from the bank until nearly 10 months after it was given, the bank was not justified in relying thereon; hence the report was not ground for refusing discharge as false financial statement.

2. **Bankruptcy ☞409(1)—Failure to enter weekly credits of part of salary of employee held by bankrupt for saving held not ground for refusing discharge.**
   Failure of bankrupt to enter weekly credits of $20, part of employe's salary retained by bankrupt for savings purposes, held not failure to keep

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

proper books of account, barring discharge, in the absence of proof that such failure was with intent by bankrupt to conceal his financial condition, in view of Bankruptcy Act, § 14b, subd. 2 (Comp. St. § 9598).

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Abraham Lustgarten, bankrupt. From an order denying discharge, the bankrupt appeals. Reversed, with instructions.

Certiorari granted Gerdes v. Lustgarten, 43 Sup. Ct. 705, 67 L. Ed. ——.

Bankrupt appeals from an order denying the motion to confirm the report of a special master and denying the application for his discharge. The specifications of objections to bankrupt's petition for discharge were predicated upon four grounds, to wit: (1) A failure to keep proper books of account; (2) the giving of a false financial statement; (3) fraudulent concealment of $2,000 from the trustees in bankruptcy; and (4) the making of false oath in the bankruptcy proceedings.

The special master in his report, however, stated that the only specifications on which testimony was introduced before him were those numbered (2) and (3) supra. He reported that the specifications were not established and recommended discharge. The District Court apparently disregarded specification (3), but sustained specifications (1) and (2), supra, and denied discharge.

Laurence J. Borshad, for appellant.

Zalkin & Cohen, of New York City (Moses Cohen, of New York City, of counsel), for trustee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. Specification 3 involved a question of fact, the details of which we need not discuss.

The Special Master held that specification 3 was not proved and that specification was properly disregarded by the District Court. The other two specifications rest on different facts and must be separately considered.

[1] Specification 2. Under date of January 5, 1920, Lustgarten gave the Corn Exchange Bank a written statement of his financial condition, as of December 15, 1919, "for the purpose" as in the statement set forth "of obtaining loans" from the bank. The statement also so provided:

"The statement is to be regarded by Abraham Lustgarten and by the Corn Exchange Bank as continuous and binding and to form a true statement as to the assets and liabilities of the undersigned, and other matters, to be relied upon by the Corn Exchange Bank upon application by the undersigned, for all loans until another statement in writing shall be substituted for this, or this statement recalled. * * * And further, whenever my financial condition is changed materially from the financial condition shown in the above statement, I agree to notify the said bank at once of such change, whether applications for further loans are made or not."

Under the headings of "Assets" and "Liabilities," the bankrupt set forth various details. Only two of those are attached (the others being concededly correct), namely, "Merchandise on hand (at cost)—$39,004.97," and "Accounts Outstanding, due from customers, all good—$30,642.50."

An expert accountant, who examined the books, testified that these items should have been $24,721.17 and $9,053.25, respectively. The

point of this testimony was that the accountant found that the figures from the books showed a net surplus of $23,158.43, where the statement of the bankrupt to the bank showed a net surplus of $58,135.89. The bankrupt insisted that he had the merchandise and accounts receivable in the amounts set forth, but that, owing to faulty bookkeeping, these amounts did not appear in the books. This question of fact, however, was not passed upon by the special master because he relied upon In re B. & R. Glove Corp. (C. C. A.) 279 Fed. 372.

We are unable to distinguish the facts in the case at bar from those in the case just cited. The nature of the statement is substantially the same. In the case at bar, the lapse of time between the date of the statement and the obtaining of the loan was nearly ten months (i. e., from January 4, 1920, to October 29, 1920), while in the B. & R. Case, the time was about six months (i. e., from June 2, 1920, to December 10, 1920). Both periods were in the same year, in respect of which general financial conditions are discussed in the B. & R. Case. In the case at bar it is doubtful on the testimony whether it can be said that the bank relied on the bankrupt's statement; but in any event, as pointed out by Judge Rogers in the B. & R. Case, the bank was not justified in relying upon the statement.

[2] Specification 1. The specification seems not to have been relied upon before the special master, but apparently was urged before the District Court. The bankrupt testified that his nephew had been in his employ for about nine or ten years, and that, beginning in 1919, the nephew's salary was $50 per week, of which he drew $30, and left with the bankrupt $20 for savings purposes. In 1920 his compensation was increased to $60, he drawing only $40, and leaving the remaining $20 with the bankrupt for the same purpose. In December, 1920, the nephew became engaged to be married and requested his uncle to pay him the amount thus retained and this amount was paid. The accountant, who was a witness on behalf of the trustee, testified that in the bankrupt's general ledger under the heading "Commission on Sales," on December 8, 1922 there was an entry of $1,000 as having been paid to the nephew, Louis Lustgarten, and on December 22, 1922, $1,000, which was posted from the cash book. Thus there was no concealment whatever of the payment of these amounts to the nephew. There is no proof that the bankrupt was insolvent in December, 1920, and, as pointed out by the special master, the trustee did not call the nephew or any other person to show that, in any manner, the transaction was not genuine. The most that is argued is that the books did not contain credit entries to offset these debits. Accurate bookkeeping would have required a proper credit entry of $20 weekly—a small amount as compared with the volume of business of the bankrupt. In the statement to the bank, the liabilities for merchandise and bank accommodations are carefully and accurately set forth, and the failure to note these small credit entries we think was due to inadvertent faulty bookkeeping, and not to any intent to conceal financial condition.

We are satisfied from the record that the trustee failed to adduce proof to show that the bankrupt intended to conceal his financial condition by failing to make these credit entries of $20 weekly, and such

intent must be proved to bar a discharge under section 14b (2) of the Bankruptcy Law (Comp. St. § 9598).

The order is reversed, with costs, and the District Court is instructed to grant a discharge to the bankrupt.