In re SIMON WELTMAN & CO.

Ex parte STIEFEL.

(District Court, S. D. New York. May 6, 1924.)

No. 34043.

1. **Courts** ⟨⟩96(1)—Decision of Circuit Court of Appeals followed, notwithstanding certiorari.

The decision of the Circuit Court of Appeals will be followed by District Judge in that circuit, notwithstanding that certiorari has been granted to review such decree.

2. **Bankruptcy** ⟨⟩407(5)—Discharge denied for false financial statement on which credit extended within year.

In view of general business conditions prevailing at the time, false financial statement dated February 2, 1922, containing continuing representations, might be relied on in sales in October and November, 1922, and for so procuring credit on such false statement debtor should be denied discharge in bankruptcy.

3. **Bankruptcy** ⟨⟩414(3)—Master's report denying partners' discharge not overruled because they disclaim knowledge of false financial statement.

False financial statement of partner made to procure credit prima facie involves all members of firm, and, where partners failed to satisfy the master by evidence in addition to their disclaimer of knowledge, his report denying their discharge for firm debts will not be overruled.

In Bankruptcy. In the matter of Simon Weltman & Co., bankrupt; Frederick R. A. Stiefel, trustee. On master's report denying bankrupts' discharge. Report confirmed.

This cause came up upon a master's report denying the bankrupts' discharge. One question was whether a financial statement dated February 2, 1922, as of January 1, 1922, might be relied upon in the sales of goods on October 10, 24, and November 11, 1922. The statement was very materially false, and contained the following: "This statement is considered as reiterated and applicable to each purchase until revoked in writing." The other question was whether two of the bankrupts who did not sign the report were implicated with him who did.

David H. Gladstone, of New York City, for trustee.

Samuel Rose, of New York City, for objecting creditor.

Samuel J. Rawak, of New York City, for bankrupts.

LEARNED HAND, District Judge (after stating the facts as above). In Re B. & R. Glove Corporation, 279 F. 372 (C. C. A. 2), the statement contained the following: "The undersigned also expressly agrees to notify Irving National Bank of any material reduction of financial responsibility." That was thought to be only an executory promise expiring with the statement itself which lasted only a reasonable time. On page 380 the case of Atlas Shoe Co. v. Bechard, 102 Me. 197, 66 A. 390, 10 L. R. A. (N. S.) 245, was seemingly approved, which held that such a statement was a continuous representation if it said that it was "a new and original statement of our assets and liabilities upon each and every purchase of goods from them * * * hereafter until we advise them in writing to the contrary."

[1] In Re Lustgarten, 289 F. 481 (C. C. A. 2), the statement read: "The statement is to be regarded * * * as continuous and binding and to form a true statement * * * to be relied upon * * * upon application * * * for all loans until another statement in writing shall be substituted for this, or this statement recalled." Nevertheless, the ruling was that at the end of 10 months of 1920 no further reliance should have been placed upon it. It is true that certiorari has been granted to this decree (Gerdes v. Lustgarten, 262 U. S. 741, 43 S. Ct. 705, 67 L. Ed. 1209), but it stands as law for me. I cannot see any distinction between the language used in that case and in the case at bar. Each means that the duration of the statement is by agreement to continue as the basis of the dealings between the parties until it is changed in writing. Therefore I regard In re Lustgarten, supra, as ruling the case at bar so far as the suffix is concerned.

The next question is whether the lapse of a little over 8 months, i. e., between February 2d and October 10th, the day of the first sale, was more than the "reasonable time," assuming as I must that the parties had not made it last till expressly changed. A delay of 6 months during the year 1920 was thought unreasonable in Re B. & R. Glove Corporation, and one of a little less than 10 in the same year in Re Lustgarten, supra. But in each case the character of the mercantile markets in that year was judicially noticed and made a ground for the conclusion. The judges thought that no creditor ought to have supposed that a statement issued in the first half of that year would be a sound reliance at the end of it.

In the case at bar the facts are otherwise. It is in proof that the prices held pretty well until the summer or early autumn of 1922, when there was a fall in the kind of goods which these bankrupts carried. How extensive this was does not appear, and the evidence will not serve. The conditions of general overstock of 1920 were not repeated 2 years later, and there appears no reason why a statement issued in February of that year should not have kept its prima facie validity for 2 months after the decline began.

[2] Hence the case turns in this aspect on whether the mere lapse of 8 months makes such a statement out of date when nothing more appears. It was held in Haimowich v. Mandel, 243 F. 338, 156 C. C. A. 118 (C. C. A. 3), that 6 months was not too long a life to give it, and it appears to me that 8 months is not. Moreover, while I must take it that the clause which I have mentioned did not give it an indefinite extension, still I think I may look to it as one of the considerations determining its duration. The bankrupts had said that it was to last till they changed it. Assuming that this was not to be read literally, yet it meant something, and it was natural within the year for a seller, who had heard nothing from the buyer, nor of any catastrophic change, as in 1920, to assume that their trading was to be on the basis which the buyer had laid down. Hence I agree with the learned master.

The next point is whether the Weltmans are chargeable with Lebeck's fraud. If the case raised neatly the question whether an innocent partner's discharge should be denied because of the commission by a copartner of one of the acts mentioned in section 14 (Comp. St. § 9598), I should be a good deal perplexed by the conflict of decision. Thus it was first held in the negative by Referee Dexter in Re Dresser, 13 Am. Bankr. Rep. 637. When the case came before Holt, J. (144 F. 318), this feature of it was not even alluded to, nor in the Circuit Court of Appeals (146 F. 383, 76 C. C. A. 655), where, indeed, the objecting creditors do not appear to have appealed at all. I think that it was a conclusion only of the referee, one which he much narrowed, if he did not wholly overrule, in Re Schwartz & Co. (D. C.) 201 F. 166, in an opinion which Judge Hough confirmed. The same seems also to have been the opinion of Judge Haight in a closely similar case,

where the point was not flatly presented (In re Landersman [D. C.] 239 F. 766), and it was the ruling of Judge Cotteral in Re Reed (D. C.) 191 F. 920.

However, the greater weight of authority is the other way. It has been twice so ruled in the Fifth Circuit (Hardie v. Swafford Bros., Dry Goods Co., 165 F. 588, 91 C. C. A. 426, 20 L. R. A. [N. S.] 785; Ragan, Malone & Co. v. Cotton & Preston, 200 F. 546, 118 C. C. A. 640), and once in the Fourth (Doyle v. First National Bank of Baltimore, 231 F. 649, 145 C. C. A. 535). Moreover, Hough, J., in Re Schachter (D. C.) 170 F. 683, 3 years before his ruling in Re Schwartz, thought the rule of Referee Dexter in Re Dresser, supra, "settled in this district." I have not been able to see the distinction between Dresser's Case and Schwartz's as pointed out by Dexter, Referee, and I must own that the law appears to me confused since 1912.

[3] However, I think that the practice followed by Hough, J., in Re Schachter, supra, and by the learned referee in the case at bar, justifies a denial of the discharge of these bankrupts. In that case Judge Hough held that prima facie the act of a partner involved all members of the firm, and, if they were not to be implicated, they must come forward and take the initiative in the proof. In that case Meyer Schachter had put in no evidence to exculpate himself, and lost his discharge. In the case at bar both the Weltmans did appear and swore that they did not have anything to do with the statement, but they failed to satisfy the master.

I agree that in the end the trustee has the burden of proof, but I do not agree that the evidence of scienter must be direct. When three men are engaged together in a business requiring credit, there is an antecedent probability that they will all know the means by which one of them has procured it. Of course they may not, but the probability does not disappear merely because they disclaim any knowledge. When, after hearing them, a judicial officer remains of opinion, given all the facts, that either they did know or were disposed not to learn how the third partner got the credit, that under any sane rule ought to be enough to implicate them in his fraud. I am not prepared to overrule this report, because the master was not convinced by these men's stories.

Report confirmed; discharge from firm debts denied, and from individual debts granted.