## MULLEN v. FIRST NAT. BANK OF ARDMORE, OKL.

### No. 238.

Circuit Court of Appeals, Tenth Circuit.

March 30, 1932.

712

Guy H. Sigler, of Ardmore, Okl., and Fred W. Green, of Guthrie, Okl. (P. M. Jackson, of Ardmore, Okl., on the brief), for appellant.

Earl Q. Gray, of Ardmore, Okl. (H. C. Potterf and J. M. Poindexter, both of Ardmore, Okl., on the brief), for appellee.

Before LEWIS and COTTERAL, Circuit Judges, and KENNAMER, District Judge.

COTTERAL, Circuit Judge.

J. S. Mullen appeals from a final order refusing him a discharge in bankruptcy. He was adjudged a bankrupt on November 21, 1922, and on August 21, 1923, applied for a discharge. The First National Bank of Ardmore objected on the grounds that, with intent to conceal his financial condition, he failed to keep books of account showing his indebtedness, and that he knowingly made false financial statements as a basis of credit and obtained money and property thereon. The objections were made more specific, by amendment, in which were added three written statements of assets and liabilities made by the bankrupt to the bank, dated January 14, 1918, May 3, 1919, and November 2, 1920.

·The matter was referred to a master, who reported against the discharge on both grounds of objection and recommended a refusal of the discharge. There was a second reference to another. master who made a like report and recommendation. Another reference was made to the same master. He found the bankrupt borrowed $30,000 upon his note to the bank, on March 22, 1919, and renewed the note on several dates from June 19, 1919, to August 12, 1922, including December 31, 1920; that Don Lacy, president of the bank, made the loan and renewals, knew the liabilities were greater than the amount listed in his statement of November 2, 1920, and did not rely on the statement; that the officers and directors of the bank who testified had no knowledge the statement was not correct, but, as the statement did not contain a continuing clause, the bank was not justified in relying upon it. That ground of objection was held to be not sustained. A like conclusion was reached upon the other ground. The recommendation was that the discharge be granted.

Exceptions were filed by the bank to the final report. The District Court overruled the exception on the ground of failure of the bankrupt to keep books of account, but upheld the exception on the ground of the false financial statements, and denied the discharge.

Appellant contends the discharge should be granted because the last statement dated November 2, 1920, did not purport to be correct, credit was not extended at or about that date, it was not a continuing statement, and the bank knew it did not disclose the bankrupt's true condition and was not misled by it.

The essentials of proof to bar a discharge under section 14b (3), of the Bankruptcy Act, 11 USCA § 32 (b) (3), are "(a) that the written statement was made for the purpose of obtaining credit; (b) that it was materially false; and (c) that the credit was obtained upon it." Gerdes v. Lustgarten, 266 U. S. 321, 45 S. Ct. 107, 109, 69 L. Ed. 309.

The statement did not purport to be absolutely correct, but instead "approximately correct." If it did not meet the representation as made, then that element of the proof was satisfied.

It was not essential that credit was extended at or about the date of the last statement. The note for $30,000 was given to the bank by the bankrupt on March 22, 1919, and was renewed on December 31, 1920, some 59 days after the statement. The statement did not represent it was continuing for the purpose of future credit. A stale representation might or might not be taken as expressive of a debtor's financial condition, at the date of a credit. The test approved in the Gerdes Case, supra, is whether the credit was the proximate result of a statement and its falsity worked the mischief. In other words, it is whether credit was granted within the period intended and the creditor relied upon the faith of the statement. Considering that the statement in question was one of several given from time to time, and was not withdrawn or sought to be corrected in any way, no limitation was put upon its use, and the renewal of the note was sought within two months, we think it is fair to con-

clude that the bankrupt intended the statement to be a representation for the extension of the note for $30,000. According to the principle of the Gerdes Case, it did not lie in his mouth to assert nonreliance on the statement, if it was actually effective in obtaining the renewal of his note.

It is not controverted that the renewal of the note was one of the objects contemplated by section 14b (3), of the Bankruptcy Act. This was true, even before the act was amended in 1926. Morton v. Snider (C. C. A.) 20 F.(2d) 469; Erickson v. Bicknell (C. C. A.) 28 F.(2d) 729; Parrish v. City National Bank (C. C. A.) 32 F.(2d) 982.

The evidence in the record does not sustain the second master in finding that Lacy, the president of the bank, did not rely on the statement. Lacy testified he had many dealings with the bankrupt, they discussed the latter's affairs, and he had knowledge of the bankrupt's transactions, knew at the date of the statement in 1920 the bankrupt owed much more money than $420,000 (shown therein), had it in mind his debts were something like $800,000, thought it was inaccurate and as accurate as the bankrupt knew it. But he stated also that the financial statements were made because they were required from all large borrowers; that the loan of $30,000 was the limit of the bank; that the loan would not have been extended without the last statement, he relied on that and what he thought he knew, adding, "We get these statements and check them up," and "We relied upon his statement and upon what we could find out too." These brief extracts from the testimony of Lacy are uncontradicted. The further details of his testimony need not be recounted.

The directors had the management of the bank, and could delegate to the president the power to make renewals of this loan. One or more of them joined in granting the renewal of the note in December, 1920. Two of the directors testified on the subject. One of them, Mr. Stuart, testified that in reliance on the statements he consented to the acceptance of the bankrupt's notes. And another director, Mr. Potterf, testified he looked them over particularly in 1920, they furnished the only accurate knowledge of the bankrupt's assets and liabilities, and he relied upon them in consenting to the renewals of the note. However, it is unimportant, as both Lacy and the directors who took part relied to a substantial extent on the last statement.

That statement showed by items assets of $1,648,400, and liabilities of $420,000. The liabilities were not as represented. It was found by the first master they were at bankruptcy, $2,216,298.89, and practically the same at the date of the statement. In the second master's last report, the indebtedness at bankruptcy was found to be the same, and $1,796,298.89 more than as shown by the statement. This wide discrepancy is startling in a period of less than 2 years, and it was not satisfactorily explained. Clearly, the statement was not "approximately correct," but willfully false and misleading to the bank directors and to Lacy as its president and representative.

The findings of the District Court were necessarily of the facts essential to the objection which was sustained, and, no serious mistake being apparent in the consideration of the evidence, such findings should by familiar rule be accepted by this court.

In our opinion, there was no error in denying the discharge, and the final order by the District Court to that effect is accordingly affirmed.