**In re FRUMKIN.**

**UNION NAT. BANK OF SCHENECTADY, N. Y., v. FRUMKIN.**

**No. 276.**

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1936.

Blodgett & Smith, of Schenectady, N. Y. (Harold Blodgett and Howard Murrin, both of Schenectady, N. Y., of counsel), for appellant.

George A. Marcus, of Schenectady, N. Y., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

PER CURIAM.

This is an appeal from an order in bankruptcy granting the bankrupt his discharge; the only specification is that he had obtained an extension of credit upon a materially false financial statement. The evidence proved that he had indorsed a note for some $13,000, made by a company of which he was the owner and held by a bank. This note fell due on May 23d, and on May 10th he presented to the bank a financial statement on the faith of which it extended payment. This statement showed him to be personally possessed of about $44,000 of assets of which $12,000 was a house in Schenectady, in fact owned by his wife. On it was a mortgage of $4,900, and there was a second mortgage of $3,500 upon both this house and another valued at $15,000, on which there was a first mortgage of $6,000. Nobody professes to defend the truth of this statement; the only issue is as to whether the bankrupt meant to deceive the bank. His excuse was twofold: That as the bank held the first mortgage on the house it knew, or at least had ready means of learning, that it was his wife's; second, that he had a power of attorney from his wife which gave him the widest authority. The referee who saw the bankrupt found that he knew that his statement was false and reported that his discharge should be denied. The judge thought otherwise; he found that the bankrupt had not been shown to have deliberately deceived the bank, and that the case broke down because this was a necessary element, as all agree.

The item in question was not indeed very important in the bankrupt's statement; his liabilities as reported were about $15,000 and his net worth about $29,000. The difference, if the house was omitted, was at most only $7,100 and would be further reduced by whatever share the house would have to bear of the second mortgage. Nevertheless, although it did not appear that the bank would not have granted the extension had it known the truth, that is not the determining factor, and the amount was not so trifling as to fall within the doctrine of In re Lessler, 74 F.(2d) 249 (C.C.A.2). As to the bankrupt's intent, he was not justified in supposing that the bank knew his wife to be the owner; the fact that she had been the owner three years before was no reason for questioning his statement made at the time that it was then his own; and the power of attorney did not give his creditors resort to the land. Yet he might honestly have believed that the bank knew the truth, or he might have thought that a power of attorney was equivalent to a deed. He did not, however, base his defense on that theory; he swore that he had told the bank that he had put as much money in the house as his wife and that he had the power of attorney. This the bank denied, and the referee disbelieved the bankrupt; his decision on such an issue ought to be conclusive. Moreover, the referee was justified, having found the bankrupt's word to be false, in refusing to find that he

believed that he was as good as an owner of the house. Indeed, in the face of the bankrupt's statement that he had put only *as much* money in the house as his wife, it is hard to see how he could have supposed that he might honestly call it his own. He had the burden of proof upon the issue of his good faith, having been shown to have in fact deceived the bank.

Order reversed; discharge denied.