Petition of JOHNS–MANVILLE SALES CORPORATION et al.

WILSON v. UNION GUARDIAN TRUST CO.

Nos. 7109, 7110.

Circuit Court of Appeals, Sixth Circuit.

Feb. 12, 1937.

J. R. Brakey, Jr., of Detroit, Mich. (Bishop & Weaver, of Detroit, Mich., on the brief), for appellant.

J. S. Horwitz, of Detroit, Mich. (Miller, Bevan, Horwitz & Des Roches, of Detroit, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Appeals from an order of the District Court confirming an order of the Referee in Bankruptcy and dismissing appellant's petition to review. While there are two appeals, they are from the same order, and we treat them as one for the purposes of review.

Appellant, as mortgagee of the bankrupt, Mark R. Hanna Company, filed a reclamation petition seeking to have an asphalt plant, a cement bag shaker, a forge and a lathe declared part of the real estate and covered by the mortgage. The Referee decided that all the property in controversy is personalty, and denied the petition.

On May 10, 1928, the bankrupt borrowed $300,000 from appellant, giving as security for the loan a mortgage covering two parcels of real estate situated in Michigan, on one of which are located all items here in controversy. Appellant has foreclosed the mortgage, and the redemption period has expired. On March 1, 1932, Mark R. Hanna Company was adjudicated bankrupt. It owned and used the mortgaged premises in the conduct of a general contracting and paving business.

The controlling question is whether the above items are real or personal property. The contract was made in Michigan, to be there performed, and involves a rule of property as to realty situated in that state. Hence, we follow the state law. Coral Gables, Inc., v. Hanley, 87 F.(2d) 780 (C.C.A.6), decided January 13, 1937.

Under the Michigan decisions three circumstances are principally to be considered in determining whether chattels affixed to real property are realty or personalty. These are (1) the character of the annexation to the realty; (2) the adaptation of the chattel thus affixed to the purpose to which the realty is devoted, and (3) the intention of the one making the annexation that the fixture shall or shall not constitute a permanent accession to the freehold. Morris v. Alexander, 208 Mich. 387, 390, 175 N.W. 264; Peninsular Stove Co. v. Young, 247 Mich. 580, 582, 226 N.W. 225; Wood Hydraulic Hoist & Body Co. v. Norton, 269 Mich. 341, 346, 257 N.W. 836.

The asphalt plant, the most important item, was erected about 1925 at a cost of approximately $52,000, on foundations prepared according to detailed specifications. It includes a smokestack 63 feet high, two large horizontal oil tanks mounted on concrete foundations extending below the frost line and connected with the rest of the plant by pipe lines laid in concrete ducts two and a half feet below the ground surface, a vertical tank embedded in a poured cement foundation, and a boilerhouse constructed of concrete, brick and steel from which it would be impossible to remove the boiler without destroying one of the walls or cutting the boiler in sections. It also includes a pug mill or mixer which is supported by steel girders bolted to cement pillars acting as foundations, a lime dust bin of seventy- or eighty-ton capacity standing on concrete pillars which extend to a depth of about four feet below the frost line, a frame structure called the power house which surrounds the transformer to which electric power is brought through a duct about four feet underground, and railroad sidings and paved driveways to facilitate the loading of trucks.

This plant is permanently annexed to the realty. Its installation on these premises by the owner of the land raises a presumption under Michigan law that the accession was intended to be permanent. Cf. Coleman v. Stearns Mfg. Co., 38 Mich. 30; Lord v. Detroit Savings Bank, 132 Mich. 510, 93 N.W. 1063. The removal of the concrete pillars, foundations, driveways and sidings would damage the land itself, as would also the removal of the buildings. If any part of the asphalt plant were dismantled, the value of the remaining parts would be considerably lessened. The plant is excellently adapted to the use of the premises made by its owner. Cf. Kent Storage Co. v. Grand Rapids Lumber Co., 239 Mich. 161, 164, 214 N.W. 111.

The president of the bankrupt corporation who was at all times its majority

522

stockholder, testified that at the time of the installation, both he and the corporation intended that the plant was to be a permanent structure. He also stated that both parties to the mortgage intended that the plant be covered thereby. A further significant fact, indicating that such was the intention, is that the mortgage specifically provided for insurance to be taken out by the bankrupt on all buildings erected or to be erected upon the premises, and required the bankrupt to assign and deliver such policies to appellant. Appellee claims that this evidence as to intention is controverted by certain entries on the books of the bankrupt corporation. In these entries the plant was listed as "equipment," and was written off as fully depreciated in less than seven years. This fact carries little weight, as the books also list as equipment items which admittedly are real estate, and the term "equipment" does not necessarily indicate personal property. Kent Storage Co. v. Grand Rapids Lumber Co., supra. We think that all three circumstances, considered as persuasive in Michigan, point to the conclusion that the asphalt plant is real property.

The forge simply rests upon the floor. Such annexation is sufficient to affix a heavy chattel to the realty as a part thereof. Cf. Smith v. Blake, 96 Mich. 542, 55 N.W. 978. It is connected with a flue pipe extending through the roof. The bag cleaner is fastened by anchor bolts to concrete pillars. The president of the bankrupt corporation testified that it was intended that the bag cleaner and forge should become permanent fixtures. The lathe is bolted to the floor and derives its power from belts attached to overhead pulleys. There is no evidence as to the intention of the parties concerning the lathe, but in view of the character of its annexation and its use as an integral part of the plant, we cannot make any real distinction between the lathe and the other appurtenances. We think that all three items are part of the realty.

Appellee relies upon Woodliff v. Citizens' Building & Realty Co., 240 Mich. 413, 215 N.W. 343, 344. This case, however, quotes with approval the statement in Harris v. Hackley, 127 Mich. 46, 86 N.W. 389, that "the intent of the parties is controlling." The application of this rule of law obviously depends upon the facts of each particular case. Here the rule strengthens the appellant's position.

We bear in mind the fact that this case involves an order of the Referee based upon a finding of fact as to intention. When confirmed by the District Court, such an order should not be set aside on anything less than a demonstration of plain mistake. Fruehauf Trailer Co. v. Bridge, 84 F.(2d) 660, 663 (C.C.A.6). However, with the exception of some entries on the books, from which an inference may possibly be drawn which is inconsistent with other entries in the same books, the facts are undisputed. They support but one conclusion, namely, that the plant and its appurtenances are realty covered by the mortgage.

The order is reversed and the case is remanded for proceedings consistent with this opinion.