### In re SHERIDAN.

District Court, D. New Jersey.

Aug. 1, 1940.

Louis Ogust, of New York City, for objecting creditor.

Edward H. Backes, of Newark, N. J., for bankrupt.

FORMAN, District Judge.

Matilda H. Sheridan, filed a petition in bankruptcy in this court August 7, 1939, which indicates that she was employed as a school teacher in Nutley, N. J., and was receiving a salary of approximately $2,280 per annum. Her total indebtedness appears to be around $3,500 of which $780.94 was secured to an indeterminate extent. Objections to her discharge were filed by the Morris Plan Industrial Bank of New York, a creditor hereinafter designated Bank, upon two specifications: First, that the bankrupt obtained a loan of money on February 3, 1938, from it by means of a financial statement in writing which was materially false. Second, that the bankrupt on May 25, 1938, obtained a loan of money from the Chester-Neal Company of Providence, Rhode Island, hereinafter designated Chester Company, by means of a financial statement which was materially false.

These specifications are based upon Section 14, sub. c(3), of the Act, 11 U.S.C.A. § 32, sub. c(3), which provides as follows: "The court shall grant the discharge unless satisfied that the bankrupt has * * * obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition * * * Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

The hearing on objections was held before one of the Referees in Bankruptcy of this court. The objecting creditor now comes before this court for a review of the order of the Referee overruling the specifications and granting a discharge to the bankrupt.

At the hearing it was shown that the bankrupt on February 3, 1938, obtained a loan of money from the Bank which in-

corporated a renewal of a past loan. Her application for this loan contains the following:

"Are you making instalment payments on a loan or for merchandise? If so, to whom [Answer] Hoffman Furniture Co.

"Original Am't [Answer] About $250.

"Payments [Answer] $12 Per Mo.

"Unpaid balance [Answer] $75.

"What is the total amount of your debts [Answer] About $300."

On May 28, 1938, the bankrupt obtained a loan from the Chester Company. In the application therefor the following questions and answers are found:

"Do you owe any individual, loan company, finance company or bank for borrowed money? [Answer] Yes. If so, give name and amount due each and how repayable [Answer] General Motors Acceptance Corporation for car—about $275 still due—$25 a month.

"Have you any other indebtedness than that listed above? [Answer] Yes. If so, state total amount and what it is for [Answer] Hoffman Furniture Co.—$40 still due on living room furniture."

It is observed at the outset that the second of the above applications for loans fails to disclose the indebtedness to the Bank. The explanation offered by the bankrupt for this omission was that the money received under this loan was turned over to her husband who was head of the Janitorial Staff of the Summer Avenue School, Newark, N. J. He had signed as a co-maker of a note securing the loan, and she stated that he had agreed to assume payment of the obligation. The bankrupt also testified that she was of the impression that the loan was insured against the death of either her or her husband, and that since her husband had died the latter part of March, 1938, she not only considered the debt his debt, but that it was paid by virtue of his death. No legal evidence is contained in the record disclosing any such insurance status.

It was also shown that the Newark Teacher's Credit Union, William P. Heddon, brother of the bankrupt and the Household Finance Corporation were creditors of the bankrupt, that their names were omitted as creditors in both of the above applications for loans, and that each of them was listed as a creditor in the schedule accompanying the petition for bankruptcy

in the sum of $287.70, $482.50 and $221.73 respectively.

The bankrupt justified her omission of the Newark Teacher's Credit Union on the ground that the money obtained by the loan went entirely to her husband, and that she considered this debt that of her husband and not of herself. This loan was evidenced by a note from her husband as maker together with herself as co-maker, dated October 15, 1937, in the sum of $500, and was secured by an assignment of his salary in writing of even date with the note to which she had appended her signature on a line designated "Husband or Wife".

The obligation to William P. Heddon seems to have arisen in this fashion—The bankrupt owed money at a bank which was secured with stock. Heddon paid this debt and secured a loan from a bank for himself and put up this same stock as collateral. The bankrupt agreed to repay him from time to time. She justified the omission of this creditor on the ground that this was just an "agreement" between her and her brother that did not require periodic payments, and, hence, was not the type of obligation required to be disclosed in the applications to the loan companies. Her brother, on friendly terms with her, testified candidly that she had given him only authority to hypothecate the stock, and that on February 1, 1938, she owed him $482.50.

The only explanation offered for the failure to list the Household Finance Corporation was that there was not enough space in the margin following the question in the application.

 The objecting creditor does not take issue with the Referee's statement of the applicable rule of law herein. The issue resolves itself in the application of that rule. The certificate of the Referee states that it is necessary that the objecting creditor prove that a materially false statement was intentionally made by the bankrupt, and that credit was extended in reliance thereon, citing Morimura, Arai & Co. v. Taback, 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586; Gerdes v. Lustgarten, 266 U.S. 321, 45 S.Ct. 107, 69 L.Ed. 309; and In re Krulewitch, D.C., 60 F.2d 1039. In addition, the cases Local Loan Company v. Hunt, 292 U.S. 234, 243, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195; Williams v. United States Fidelity & G. Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713; and Royal Indemnity Company v. Cooper, 4 Cir., 26

F.2d 585, were cited for the proposition that the Bankruptcy Act should be liberally construed in favor of the bankrupt. Following this statement of law, the Referee concluded that there was no .evidence to indicate that either the Bank or the Chester Company relied upon the statements herein. He then discussed the alleged falsities in the statement to the Bank, but only the omission of the Newark Teacher's Credit Union and William Heddon as creditors. Of the Credit Union he gave weight to the bankrupt's statement that this was a loan to her husband, because she was a co-maker with her husband on the note evidencing this debt, and because the assignment of wages as collateral for the debt represented the wages of her husband and not herself. This induced the Referee to conclude that there was an absence of guilty scienter.

With reference to the failure to list William Heddon as a creditor, the Referee was impressed with her statement that this was an obligation that could be disposed of between her and her brother at any time inasmuch as he had stock as collateral.

The Referee refused to consider the evidence submitted in connection with the statement made to the Chester Company because it was not followed up with evidence of reliance by that company on the statement.

█ The cases of In re Feldman, 7 Cir., 86 F.2d 495; In re Simon, D.C., 268 F. 1006; In re Neuman, D.C., 251 F. 667; and In re Reed, D.C., 191 F. 920, amplify the Referee's statement of the applicable law, indicating that reliance by the creditor may be proved from circumstantial evidence. Incidentally, we do not think this proposition has been overlooked as the objecting creditor contends, for we find the following pertinent statement by the Referee during the course of the proceedings before him: " * * * The law is that the falsity of the statement must be at the time it is made, intentionally and knowingly false for the purpose of deceiving the Morris Plan Industrial Bank or any other creditor. That is the law as laid down in all the cases and consequently, the mental attitude of the person signing a statement is an element. Of course, · you can't prove a mental action. You can only prove a mental action or intent by circumstances indicating that it must have been intentionally and knowingly made with guilty knowledge in the mind of the person who makes it." (Transcript; page 23)

Our problem is whether the evidence before the Referee supports his decision, did the testimony show that the creditor had produced reasonable grounds to prevent the discharge, and, if so, has the bankrupt sustained her burden in rebuttal.

The Referee in confining himself to the two creditors above has failed to consider the omission of the Household Finance Corporation which was a creditor at the time the statement was made to the Bank. As indicated above the only explanation offered by the bankrupt to justify this was the fact that the margin reserved for the designation of creditors was not large enough to include this creditor.

█ We also feel that the Referee's disregard of the statement given to the Chester Company is erroneous. We do not understand that he refused to consider this because the objection to the financial statement was not made by it. On the contrary, the Referee states in his certificate that "it is the law that an objecting creditor can rely for opposing the discharge of a bankrupt on a false financial statement given to another creditor". This statement is supported by the cases of Sadler v. Hirshberg Bros., 6 Cir., 23 F.2d 245, and In re Kraemer, D.C., 17 F.2d 110. The disregard of this evidence, then, must be based upon lack of relevancy. We think, however, that the evidence is material because it bears upon and demonstrates the bankrupt's intent in that she persistently omitted a complete list of her creditors in these financial statements.

█ We think that reliance upon the part of these creditors may be inferred. The statements were the bases and conditions of credit. Of such statements the court in the case of In re Reed, supra [191 F. 930] observed: "The statement was asked and furnished as a basis for credit, and the relation between the representation and the shipment of the merchandise was so close that the conclusion is only reasonable that the creditor parted with the merchandise on the strength of the representation." 191 F. 920, 930.

The case of In re Perlmutter, D.C., 256 F. 860, 865, 866, makes the following pertinent statement: " * * * A rational being is presumed to intend the natural and probable consequences of his words and conduct, and Joseph Perlmutter, in issuing the statement, is presumed to have intended the effect it produced upon the Title Company. The latter had a right to assume

290

that the statement was true, and, as it parted with its money on the strength of the statement, the person responsible for the untruth, in the absence of proof showing the contrary, will be presumed to have intended to hide from the lender the firm's true financial condition. * * * When the objecting creditors showed that this statement was untrue in a material respect, that the bankrupts had obtained money from the bank on the credit of it, and that its untruthfulness related to a subject within the knowledge of Joseph who gave currency to the untruth, they had made a prima facie case disentitling him to a discharge."

 The Supreme Court in the case of Morimura, Arai & Co. v. Taback, 279 U.S. 24, 33, 49 S.Ct. 212, 73 L.Ed. 586, indicated that Section 14, sub. b(3), the present section of the Act involved herein covers false statements intentionally made, or those with reckless indifference to the true facts.

The fact is that the bankrupt's explanations for the omission of the several creditors are not marked with that degree of intelligence one would expect from a person of her educational standing. The statements indicating she felt the obligations owing to the Newark Credit Teacher's Union, and the Bank, were those of her husband because he received the benefit of the loans are unwarranted. She should have known better. Her statement explaining the omission of her brother as creditor because she could pay that at any time is marked with the symptoms of an adolescent mind. Her justification of her failure to list the Household Finance Corporation because there was not enough space on the margin of the paper is stamped with stupidity or lack of ingenuity to think up a better excuse quickly.

We also point out that there is a complete absence of any testimony to justify the bankrupt in erroneously stating her total indebtedness which was by no means a nominal departure from the true fact. The application to the Bank discloses a total indebtedness of about $300 and the application to the Chester Company discloses a total indebtedness of $315. The total amount omitted in the application to the Bank based upon balances due as specified in the schedule accompanying the petition in bankruptcy amounted to $991.93. The total amount omitted in the application to the Chester Company includes this amount plus the sum due the Morris Plan

Bank as disclosed in the same schedule, $470, a total of $1,461.93. We are unable to ascertain, from the record, the total amounts due omitted creditors as of the date of the applications in dispute.

Finally, there was no testimony to reconcile the listing of these creditors in the schedules accompanying the petition in bankruptcy and her failure to list them in these financial statements.

We conclude that reasonable grounds to prevent a discharge are exhibited herein, and that the testimony offered by the bankrupt is destitute of that degree of persuasion required to rebut the case made against her. The discharge of the bankrupt is denied.