## CUNNINGHAM v. ELCO DISTRIBU-TORS, Inc.
### No. 11079.

United States Court of Appeals
Sixth Circuit.
April 5, 1951.

Jay Zellar, Zanesville, Ohio, Michael R. Tanner, Zanesville, Ohio, on brief, for appellant.

Harold E. Gottlieb, Zanesville, Ohio, for appellee.

Before ALLEN, MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

Our concern for the administration of substantial justice has accorded unusual indulgence to the appellant in this case. The appeal is from an order of the district court sustaining denial of the discharge of the bankrupt by the referee in bankruptcy. The record filed here contained no transcript of the evidence before the referee, and no additional evidence was introduced before the judge at the hearing on petition for review. The attorney for appellant had neglected to designate in his praecipe an essential element to consideration of his points on appeal. In oral arguments and briefs, the attorneys discussed facts of which the record was bare. Leave was granted appellant to file in typewritten form the needed transcript, which consisted of fifty-five typewritten pages and was not filed until two months after the hearing. This has occasioned the delay in disposition of the case.

From the findings of fact of the referee, all substantially supported by the evidence, it appears that the bankrupt, Cunningham, conducted in Zanesville, Ohio, a wholesale business under the name and style of Acme Candy and Notion Company. Much of his merchandise was purchased from appellee, Elco Distributors, Inc., a corporation of which Levin and wife were the principal stockholders. Eventually, Cunningham was pressed by Levin, the corporation's executive, for payment of an open account indebtedness of some $6,000 to Elco and made repeated promises to pay, which were not fulfilled, with the result that Levin threatened suit. Being unable to secure from a bank in his home city money with which to pay his indebtedness to Elco, Cunningham discussed with Levin the possibility of securing a loan from a bank in Steubenville, Ohio, where the Elco company

conducted its business. The loan, if obtained, would enable Cunningham to pay his indebtedness to Elco.

The two men went to the National Exchange Bank and Trust Company in Steubenville, discussed the matter of a loan, and secured a blank note and a form for the financial statement required by the bank. Cunningham took this statement back to Zanesville and had his bookkeeper fill in the financial statement with figures taken from his books, which listed no real property. Cunningham, however, caused to be listed in the financial statement an item of real estate in which his wife owned an equity. He knew that he did not own the real estate but that, subject to a mortgage, it belonged to his wife. He stated that he hoped that she would join him in signing both the financial statement and the promissory note to the bank. This she declined to do.

The financial statement signed by Cunningham showed on the balance sheet the value of the real estate to be $9,200, subject to a mortgage of $5,000. In the schedule of real estate owned, appearing in the financial statement below the balance sheet, *title to the property was shown to be in Cunningham and his wife.* Cunningham left the financial statement and promissory note with Levin, intending that the documents should be used to secure a loan of $6,000 from the Steubenville bank. He knew that the representation that the real estate listed in the financial statement as owned jointly by his wife and himself was untrue.

A promissory note signed by Cunningham, on which Levin and wife were also obligated, was accepted by the bank; Levin and wife received $6,000; and Cunningham's account with Elco Distributors, Inc., was credited with that amount. In supplying the money, the bank, as found by the referee, "relied in part upon the financial statement submitted and published by Cunningham." According to the referee, neither the Levins nor their Elco corporation "relied upon the financial statement furnished by Cunningham" for the reason that Levin admitted paying no attention to it. The bankrupt, Cunningham, "had been em-ployed in a bank for a period of some five years prior to his business venture and was therefore familiar with banking practices and forms."

In a carefully prepared ten-page opinion, the referee fully discussed the facts, quoting the most material evidence of record, which we deem it unnecessary to elaborate. It should be pointed out, however, that the referee quoted the admission of the bankrupt that his wife refused to sign the false financial statement, because it included her interest in the real estate. The bankrupt said that he included his wife's real estate in the financial statement in the expectation that she would sign with him the promissory note given the bank.

Levin was active in procuring the money from the bank, but eventually had to pay the note executed by the bankrupt, Mrs. Levin, and himself. The referee concluded from the evidence and "from the statement of the bankrupt particularly" that he issued "the materially false statement in writing respecting his financial condition, and that he had thereby obtained money or property on credit, or obtained an extension or renewal of credit." The referee found further that the bank "in furnishing the $6,000 involved herein did rely upon the false financial statement issued by the bankrupt." The referee stated in his opinion: "The court does not find that the bank relied solely upon the false financial statement, and it is not necessary to so find to reach the conclusion herein made," which was that the discharge of the bankrupt must be denied under section 14, sub. c(3) of the Bankruptcy Act. 11 U.S.C.A. § 32, sub. c(3).

In an order reciting that the cause had been heard "on certificate of review filed by the bankrupt" and that the questions involved had been submitted on brief and carefully considered, the district judge found that the objections to the order of the referee were not well taken; and they were accordingly overruled. The findings and conclusions of the referee were thus confirmed.

No principle has been more firmly established in this circuit than that con-

current findings of the referee in bankruptcy and the district judge are not to be set aside, except upon clear demonstration of mistake. Albinak v. Kuhn, 6 Cir., 149 F.2d 108; New Southern Ohio Gas Co. v. Roush, 6 Cir., 138 F.2d 411; In re Allied Products Co., 6 Cir., 134 F.2d 725; Lackawanna Pants Mfg. Co. v. Wiseman, 6 Cir., 133 F.2d 482; In re Penfield Distilling Co., 6 Cir., 131 F.2d 694; Kowalsky v. American Employers Ins. Co., 6 Cir., 90 F.2d 476; Petition of Johns-Manville Sales Corporation, 6 Cir., 88 F.2d 520; Ohio Valley Bank Co. v. Mack, 6 Cir., 163 F. 155, 158, 24 L.R.A.,N.S., 184. The first three points on appeal are invalid upon this principle, for the reason that they all challenge concurrent findings of fact of the referee and the judge, based upon substantial evidence and certainly not clearly erroneous.

In his statement of points to be relied upon in this court, appellant assigns only one other error. He charges error in "the conclusion of law that the Elco Distributors, Inc., could object to the debtor's discharge and bankruptcy because of the false financial statement." The point is not well taken.

The pertinent portion of the applicable statute reads: "The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition; * * * Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt." 11 U.S.C.A. § 32, sub. c.

It should be first observed that the statute does not require that an objecting creditor should be the person from whom the bankrupt obtained money or property on credit, or an extension or renewal of credit, by virtue of his false financial statement. Next, it should be noted that the burden is placed upon the bankrupt of proving that he did not make the materially false statement in writing once an objector has shown to the satisfaction of the court that there are reasonable grounds for belief that the bankrupt did make the materially false statement in consequence of which he obtained money or property on credit, or an extension or renewal of credit. In the instant matter, there is no question that the bankrupt published a materially false statement in writing in respect of his financial condition.

It is clear from the language of the statute that the purpose of Congress was to prevent any person from falsifying in writing his financial condition and thereby obtaining money or property on credit, or an extension or renewal of credit without suffering the consequential penalty of being denied the privilege of discharging his debts in bankruptcy. The objective was to prevent benefit from fraud or fraudulent falsification in commercial or any other sort of business transactions. A court of equity in protecting the rights of all creditors of a bankrupt will not shield dishonesty. The technical argument made here that the party objecting to the discharge had knowledge that the fraudulent misrepresentation in writing was untrue or even connived with the bankrupt should not be seriously considered.

When a person in hard circumstances obtains money or extension of credit from a bank by fraudulent misrepresentation in writing of his financial condition and thereby is enabled to stave off any creditor, the position of some creditor may be detrimentally changed. The apparently improved financial condition of the ultimate bankrupt could well lull a creditor into inaction where immediate action would have eventually protected his interest better than a bankruptcy court could subsequently conserve.

The opposition to the discharge of a bankrupt interposed by any creditor upon a lawful ground inures to the benefit of all creditors.

Relevant authorities will now be reviewed. The Court of Appeals for the Second Circuit has promulgated several opinions upon the subject under consideration. That court has directly held that the fact that a bank to whom the bankrupt gave a materially false financial statement in writing had been paid and was not objecting to the discharge did not entitle the bankrupt to his discharge over the objection of another creditor. An order of the district court granting the discharge was reversed and the discharge denied. In re Haggerty, 2 Cir., 165 F.2d 977. The court called attention to its earlier opinion in the case of In re Ernst, 2 Cir., 107 F.2d 760, 761, where it was said: "It is of no moment that one of the loans was paid before bankruptcy. Josephs v. Powell & Campbell, 2 Cir., 213 F. 627; nor that the bank is not opposing the discharge; In re Weinstein, D. C., 34 F.2d 964; nor that the bankrupt did not himself receive the proceeds of the loans. In re Dresser & Co., D.C., 144 F. 318. Affirmed, 2 Cir., 145 F. 1021."

Moreover, it has been held in the Second Circuit that where nearly three years before the filing of a voluntary petition in bankruptcy the bankrupt had obtained a loan by means of a materially false statement in writing with respect to his financial condition but the loan had been paid about a year before the filing of the petition, the bankrupt was properly denied a discharge. In re Arky, 2 Cir., 138 F.2d 669. In another case, Margolin v. Moskowitz, 2 Cir., 157 F.2d 872, the denial by the district court of a discharge in bankruptcy was affirmed under the same subsection of the statute under consideration here, 11 U.S. C.A. § 32, sub. c, section 14, sub. c, Bankruptcy Act.

A case from the Second Circuit wherein the order of the district court discharging the bankrupt was reversed, In re Frumkin, 2 Cir., 82 F.2d 290, bears analogy to the instant controversy in the type of misrepresentation made by the bankrupt. There, the financial statement of the bankrupt made to the bank showed him to be the owner of a house, which was in fact owned by his wife. His excuse defending his admittedly false statement was that he had not meant to deceive the bank which, as holder of a first-mortgage on the house, knew or should have known, so he said, that it belonged to his wife and that he had a power of attorney from her giving him the widest authority. It was held that the bankrupt had the burden of proof upon the issue of his good faith, which he had not successfully carried.

Chief Judge Hutcheson of the Court of Appeals for the Fifth Circuit, when sitting by designation in the district court at Houston, denied a bankrupt's discharge and made this statement with which we are in accord: "The statute denouncing the obtaining of money, property, or credit upon a materially false statement in writing made for the purpose of obtaining credit operates generally and completely to prevent the discharge of any person so offending. Gerdes v. Lustgarten, 266 U.S. 321, 45 S. Ct. 107, 69 L.Ed. 309; Morimura, Arai & Co. v. Taback, 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586; Levy v. Industrial Corporation, 276 U.S. 281, 48 S.Ct. 298, 72 L.Ed. 572." In re Eastham, D. C., 51 F.2d 287.

In Morimura, Arai & Company v. Taback, supra, the Supreme Court, in reversing a judgment granting a discharge in bankruptcy, pointed out, 279 U.S. on page 33, 49 S.Ct. on page 215, 73 L.Ed. 586, of its opinion that the materially false statement in writing made by the bankrupt to obtain goods on credit "was made and acquiesced in either with actual knowledge that it was incorrect, or with reckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable grounds to believe that it was in fact correct."

The opinion of Mr. Justice Holmes, in Levy v. Industrial Corporation, supra, denying the discharge of a bankrupt in consequence of his materially false statement in writing to obtain a loan to a corporation controlled by him, is illustrative of the principle to which we adhere.

In Harris v. Baker, 86 F.2d 936, 937, the Court of Appeals for the Ninth Circuit, in affirming the denial of a discharge in bankruptcy, asserted that intent to defraud is

the basic ingredient of the acts of the bankrupt whose good faith must emphasize his acts in dealing with his property, that it is not essential that his creditors be ultimately defrauded in order to prevent his discharge; and that it "is the evil mind against which the bar is placed so as to guard against repetition, as well as give creditors a hold on the future activities of the bankrupt." See also Yates v. Boteler, 9 Cir., 163 F.2d 953.

For illustrative opinions of the Courts of Appeals for the Fifth, Seventh and Tenth Circuits, in which discharges in bankruptcy were denied by virtue of the statute under discussion, see Klecka v. Shuttles Bros. & Lewis, 5 Cir., 115 F.2d 573; In re West, 7 Cir., 158 F.2d 858; In re Schwartz, 7 Cir., 133 F.2d 216; Mullen v. First Nat. Bank of Ardmore, Okla., 10 Cir., 57 F.2d 711. See likewise several district court opinions: In re Berley, D.C.E.D.N.Y., 39 F.Supp. 615; In re Forman, D.C.E.D.N.Y., 40 F.Supp. 889; In re Sheridan, D.C.D.N. J., 34 F.Supp. 286; In re Monsch, D.C.E.D. Ky., 18 F.Supp. 913. In the Berley case, a husband, in an application for a personal loan, listed realty owned by his wife in such manner as to give the impression that he owned it. This was held to defeat his discharge in bankruptcy. In the Forman case, where the bankrupt was denied his discharge on the ground that he had made a materially false statement in writing as to his financial condition to a bank from which credit was obtained in reliance thereon, it was held to be immaterial that the bank was not opposing his discharge or that the loan was paid off before bankruptcy, or that the proceeds of the loan were not received by the bankrupt. In the Sheridan case, the following statement in the certificate of the referee in bankruptcy was approved in denying a discharge: "it is the law that an objecting creditor can rely for opposing a discharge of a bankrupt on a false financial statement given to another creditor". [34 F.Supp. 289.] In the Monsch case, District Judge Ford in denying the bankrupt's petition for discharge, said: "It is not essential that, in extending credit, sole reliance be placed upon the false statement, but partial reliance thereon, in good faith, is sufficient." [18 F.Supp. 915.]

In the case at bar, the vice-president of the Steubenville bank which made the loan testified that the financial statement of the bankrupt showed that he had "quite a bit of equity in property", and along with the endorsement on the note was considered sufficient to justify the loan. In Albinak v. Kuhn, 6 Cir., 149 F.2d 108, this court affirmed the denial of a discharge in bankruptcy pursuant to the section of the Bankruptcy Act under consideration here. Cf. Sadler v. Hirshberg Bros., 6 Cir., 23 F.2d 245.

For the reasons which we have endeavored to make apparent, the order of the district court affirming the denial of the application for a discharge made by the bankrupt is affirmed.

McALLISTER, Circuit Judge (dissenting).

Charles S. Cunningham was engaged in the wholesale distribution of candy and notions, under the name of Acme Candy and Notion Company, during 1947 and for several years prior thereto. In the conduct of his business, Cunningham bought merchandise from Elco Distributors, Inc., a corporation. The stockholders in this corporation were Mr. and Mrs. Emil Levin. During the course of their business relationship, Elco Distributors extended Cunningham credit during various periods in large amounts, at one time Cunningham owing them, on open account, more than $52,-000. Sometime about June, 1947, the Levins began worrying about Cunningham's indebtedness to them, which at that time amounted to about $6,000. They began pressing him for payment and Cunningham was not in a position where he could pay. As a result, the Levins and Cunningham began to discuss a loan from a bank so that the Levins would secure a payment on their account of $6,000. Cunningham told Levin that he couldn't get any loan from the banks in his home town of Zanesville. There is some dispute between them as to what happened thereafter. Cunningham says that Levin asked him to prepare a financial state-

ment and bring it over to Steubenville, where the Levins lived, and they would try to get the bank there to loan him the money. Levin says that Cunningham asked him if he couldn't bring the statement to the Levins' bank. In any event, Cunningham and Levin called at the Steubenville bank and discussed the note and took a blank form for a financial statement which Cunningham was to fill out. Cunningham testified that at the time he thought he had some interest in the home which he and his wife were living in because he was contributing to the payments. However, the fact was that he had no interest in their home; but Cunningham says that Levin suggested that he include the home in his statement of assets and that he have Mrs. Cunningham sign the note with him. Levin denies that he proposed that Mrs. Cunningham sign the note. Mrs. Cunningham had no interest in, or connection with, her husband's business, and to ask her to pledge her home, or her interest in her home, for a past due business debt of her husband would seem like putting pressure on.

A few days after Levin and Cunningham had called at the bank, Cunningham returned to Steubenville, and according to his testimony, told Levin that his wife would not sign the note. The financial statement set forth as an asset certain real estate owned in Zanesville, Ohio, of the value of $9,200, with a mortgage thereon of $5,000. This declaration contained the statement, "see Schedule" under the listing of "Real Estate owned." Below the statement was a "Schedule of Real Estate Owned," setting forth the real estate at Zanesville, Ohio, as follows:

| | | Imp. App. Value | Mortgage | Insurance |
|---|---|---|---|---|
| 611 Larzelere Ave. Zanesville, Ohio | C. S. & Ollie Cunningham | $10,000.00 | $4,900.00 | $5,000.00 |

On the reverse side of the statement appeared items of expense and income, merchandise valuation, insurance, and like items. The heading, "Life Insurance carried" showed $34,000, with a cash value of $1,100, with the beneficiary, "Ollie Cunningham, wife." According to Mrs. Levin's testimony, Cunningham had told her that he and his wife owned real estate in Zanesville which consisted of their home. He further told the bookkeeper of the Levins that the property which would be collateral for the note would be his home. The bookkeeper further testified that Mrs. Levin had stated that Cunningham's house would be good for the collateral. If Cunningham had been, as represented in the statement, a tenant in common with his wife, his interest in the home would have amounted to one-half of their equity of $4,300, or $2,150. The total assets which he set forth in his financial statement, which are not questioned, amounted to $55,729.14.

Cunningham testified that when he told Levin that his wife would not sign the note, he told Levin that he would go to the bank with him, but that Levin said, "No, I'll have a hard enough time getting it through myself," and that Levin took the note and the statement to the bank alone. The referee made no findings on this phase of the case, stating that, no matter who took the note and statement to the bank, the bank made the loan relying on the statement. The referee did, however, find that it must be assumed that Cunningham, hoping to secure the signature of his wife, authorized his bookkeeper to include the real estate in the financial statement. The bank, however, would not loan anything on the note unless Levin and his wife signed as endorsers. Mrs. Levin was in the hospital at the time, but three days later, she signed as an endorser, and with her husband's name also on the note, $6,000 was paid over to the Levins. They, in turn, credited this amount on Cunningham's indebtedness to them. Cunningham paid $2,440 on the note, and upon his default in payments, the Levins were called upon, as endorsers, to pay the balance of $3,560, which they did. Later, Cunningham was adjudicated bankrupt. The bank was, therefore, paid in full, and has never made any claim of fraud.

Specifications objecting to Cunningham's discharge in bankruptcy were later filed by

Levin on behalf of Elco Distributors, which, as above mentioned, was owned by Levin and his wife. The specification objecting to the discharge was as follows: "For the reason that said bankrupt obtained money or property by making a false financial statement; that said statement was given on or about June 30, 1947, to a bank at Steubenville, Ohio, and that said bankrupt induced this creditor to sign a note to said bank by listing among his assets certain real estate located in Zanesville, Ohio, when in truth at said time said bankrupt did not own said real estate." This specification is based upon Title 11 U.S.C.A. § 32, which provides for denial of discharge where the bankrupt has: "obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition".

On the factual question whether the bank relied upon Cunningham's financial statement in making the loan, the vice president of the bank in question was a witness on behalf of Levin, and the most that could be claimed to show reliance on the financial statement was his answer, in reply to a question of Levin's attorney: "The statement showed quite a bit of equity in property and along with Mrs. Levin's signature and endorsement on it it was considered sufficient to justify the loan." The only equity that could have been considered by the bank was $2,150, as the statement showed the property was owned by Cunningham and his wife, and their total equity was only $4,300. Furthermore, this equity of $2,150 was only one item in a statement showing assets of $55,729.14, and a net worth of $35,624.14—items which were unquestioned except for the equity item. Nor was anything said by the bank of the fact that the value of the real estate was given in one place as $10,000, and in another place, as $9,200; that in one place on the statement, it was set forth as "owned" by Cunningham, and in another, shown to be owned by him and his wife. The vice president of the bank did not know that the statement represented that the real estate was owned

by Cunningham and his wife. He thought that Cunningham owned it all until payments on the note were in default, when he asked Mrs. Cunningham to sign the note also. And, in this, he seems not to have been remiss for reasons that hereafter appear.

The only reasonable conclusion from the foregoing is that the bank was not interested in the details of the financial statement and was not relying on the statement in making the loan. And it seems to me that this conclusion is confirmed by the undisputed evidence in the case. According to the testimony, the bank had on file financial statements from both Mr. and Mrs. Levin. The bank refused to make the loan here in question, unless both Mr. Levin and his wife endorsed the note, and Levin's testimony was undisputed that they would not have had to have Cunningham's financial statement in order to go to the bank and get the money. If the bank would loan the money to the Levins on their signatures without Cunningham's statement, the bank was not loaning the money here in question in reliance or partial reliance on Cunningham's financial statement, inasmuch as both Levins were required to endorse the note before the money was paid over to them. The vice president of the bank did not testify that he made the loan in reliance upon the financial statement, or that he would not have made the loan except in reliance upon it; and in view of the fact that the bank would have made the loan to the Levins on their signatures without Cunningham's statement, that may be the reason why such evidence was not forthcoming. Where it is claimed that a bankrupt secured property or credit by means of a false financial statement, a discharge will not be denied to the bankrupt where there was no reliance upon the false statement. Banks v. Siegel, 4 Cir., 181 F.2d 309; In re Livermore, 2 Cir., 96 F.2d 93; In re Little, 2 Cir., 65 F.2d 777; In re Day, D.C. Mass., 11 F.Supp. 400.

But even without regard to the fact that the evidence shows that the bank did not rely on Cunningham's financial statement in making the loan, there is a more cogent reason in law why the discharge should

have been granted. The only specification of objection to the discharge in bankruptcy was filed by Levin, who alleged that Cunningham had defrauded him by means of the false financial statement; and that claim is without merit, inasmuch as the referee found, on Levin's own testimony, that he did not rely upon the statement. The objection now made to the discharge, that Cunningham defrauded the bank by means of the financial statement, is a new attack and will not now be considered inasmuch as it was not set forth in the specification of objection to the discharge.

From Levin's specification objecting to Cunningham's discharge in bankruptcy, as above set forth, it appears that no one is alleged to have been defrauded except Levin himself. It can not be said, from the language of the specification, that it is charged that the bank was defrauded by the financial statement. It is rather alleged that Levin was defrauded because the "said bankrupt induced this creditor to sign a note to said bank by listing among his assets certain real estate located in Zanesville, Ohio, when in truth at said time said bankrupt did not own said real estate." Not only does it appear from the specification that Levin was the creditor alleged to have been defrauded by the false financial statement, but the hearing on Levin's objections was conducted by him and his counsel, with a view to proving that Levin was the person who was defrauded.

All of this is clearly shown by Levin's testimony. In attempting to prove his specification of objection to Cunningham's discharge, that he had endorsed the note in reliance upon the financial statement, Levin testified he would never have endorsed it, if he had known that the financial statement was wrong. The referee asked him:

"Now what reason can you give that you would not have gone on a note with him had you known his statement was not true? A. Because I wouldn't have to have his statement to go to the bank to get money.

    *     *     *     *     *     *

"Q. Did you know at that time that you would be responsible to pay for that note if Mr. Cunningham defaulted? A. I knew that.

"The Court: The thing that I had in mind should be cleared up. The witness had stated that he would not have gone on the note had he known the statement was bad. *Obviously, it is intended to show reliance on the statement.* Now, I can't understand and will not be able to understand without further testimony from him why he says he would not have gone on that note had he known the statement was false. (Emphasis supplied.)

Counsel for Mr. Levin: "I think I can develop that. Mr. Levin, when Mr. Cunningham owed you a sizable account, as you previously testified, did you make any reference to entering a suit against him? A. I did.

"Q. And would you have sued him at the time if payment had not been forthcoming? A. Absolutely.

    *     *     *     *     *     *

"Q. Will you tell the court at the time that you co-signed or endorsed this note for Mr. Cunningham, if you had reason and did believe that Mr. Cunningham would pay it off? A. I did believe he would pay it off.

"Q. And was the financial statement, as presented to you, part of the reasoning that lead you to that? A. That was.

    *     *     *     *     *     *

"Q. Did you understand at the time you endorsed this note at the Steubenville Bank just what you were doing for or with Mr. Cunningham? A. I knew that if he didn't pay I would have to pay.

"Q. And did you know whether that had the effect of granting to him an extension of credit? A. That did, sir.

"Q. And how did it? A. We gave him merchandise after that.

"Q. Now, at the time you endorsed or co-signed the note, did you place reliance on that financial statement? A. I don't know much about financial statements. I sign them. Mr. Cunningham brought this statement and I didn't even look at it. * * *

"Q. I'll ask you what you considered as your security for co-signing Mr. Cunningham's note? A. The property, and the

amounts of assets he had on his financial statement.

"Q. And, Mr. Levin, if at the time you went over this financial statement in the bank you had observed that he had less assets than he had listed here and had no real estate listed, would you have endorsed the note for him? A. No."

All of this testimony of Levin was in support of his specification of objection to Cunningham's discharge, that he had been induced to sign Cunningham's note in reliance upon a false financial statement. The specification did not include an objection that the bank had made a loan in reliance upon a false financial statement.

The referee did not believe Levin's testimony that he had relied upon the financial statement, and made findings of fact that the Levins did not rely on the statement in endorsing the note.

In considering the law relating to specifications of objection to discharge in bankruptcy, and what they are required to contain, we revert to the specification filed in this case. Levin's specification set forth: (1) that Cunningham had obtained money or property by making a false financial statement; (2) that said statement was given to a bank in Steubenville, Ohio; and (3) that Cunningham had induced Levin to sign a note to the said bank by listing among his assets certain real estate which he did not own. This specification can not be read other than an objection by Levin that Cunningham had defrauded him by means of a false financial statement.

With regard to specifications of objection to discharge in bankruptcy, they constitute a pleading; and the allegations set forth therein should be distinct, specific, and definite, and be set forth with exactness and state issuable facts. Kaganowitz v. Manufacturers Trust Co., 2 Cir., 145 F. 2d 754; In re Phillips, D.C.Ohio, 298 F. 135.

While specifications opposing the discharge of a bankrupt need not necessarily comply with the strict requirement governing the form of indictments, they must be sufficiently definite to apprise the bankrupt with reasonable certainty of the nature of the charges against him and of the grounds of the objections to his discharge, so that he may be able properly to prepare his defense and to frame and try specific issues of material fact, In re Slatkin, D.C.Mich., 286 F. 242; and a bankrupt is entitled to a discharge unless one of the grounds set forth in the section of the statute is pleaded and sustained by proof, and the burden to do this rests upon the objecting creditor, In re Groves, D.C.Fla., 244 F. 197; In re Epstein, D.C.Fla., 248 F. 191. Objections to a bankrupt's discharge must not only be stated in the general words of the statute, or their equivalent, but must also state facts sufficient to point out the exact charge against the bankrupt, and show that the act charged is clearly within the statute. In re Woods, D.C.N.H., 283 F. 565.

"When it is alleged that the bankrupt has obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit, not only must the false representations be set out, but the name or names of the person or persons so alleged to have been defrauded must be given. It is quite true that the proceeding is not a criminal one * * * and that, while the objecting party has the burden of proof, he is not required to prove the commission of the offense alleged beyond a reasonable doubt, a fair preponderance of evidence being sufficient * * *; In re Dauchy, D.C., 122 F. 688, still the bankrupt is entitled to have the specifications of objection made so explicit and definite that he may have notice of the exact charge made and which he is to meet." In re Levey, D.C.N.Y., 133 F. 572, 576.

An objection to discharge on the ground that the bankrupt obtained property by means of a materially false statement in writing is insufficient, unless it sets out the statement and alleges wherein it was false, to whom it was made, from whom the property was obtained, and the name of the person claimed to have been defrauded. In re Wood, D.C.N.H., 283 F. 565; In re Levey, supra; In re Epstein, D.C.Fla., 248 F. 191.

Only such grounds of objection as are specified by the objecting creditor will be

considered; and objections to a discharge which are not set forth in the specifications will not be considered and can not form the basis for denial of the discharge. In re Feinsilver et al., 2 Cir., 24 F.2d 408; In re Russell, D.C.N.H., 52 F.2d 749.

Levin's specification objecting to Cunningham's discharge does not allege that Cunningham defrauded the bank, but that he defrauded Levin. If the specification had been based upon the ground that Cunningham had defrauded the bank by a false financial statement, the law required that there be explicitly set forth the name of the bank as the party alleged to have been defrauded and an explicit allegation that the property or credit was obtained from the bank by means of the false financial statement. The specification filed does not cover such grounds. The claim that Cunningham defrauded the bank by means of the financial statement is an afterthought on the part of Levin and was advanced only when the referee indicated that he did not believe Levin had relied on the statement. It was not a ground set forth by Levin in his specification of objections to the discharge. "A denial of a discharge on grounds not covered by the specifications is erroneous and the discharge may be denied only on a ground covered by the Specifications of Objections. In re Feinsilver et al., 2 Cir., 24 F.2d 408; In re Green, D.C.N.Y., 50 F.Supp. 630, 631." In re Hopper, D.C.Ky., 79 F.Supp. 910, 912.

The referee, in an order affirmed by the district court, denied a discharge in bankruptcy to Cunningham on the ground that he had obtained "money, or property on credit, or obtained an extension or renewal of credit" by means of the false financial statement, and that the bank had relied on the statement in loaning the money on the note. In his findings, the referee stated that he was not impressed with the contentions of the Levins that they were imposed upon by the statement supplied by Cunningham; that the interests of the Levins and the bankrupt were all one—to secure from the bank the $6,000 which both parties needed, just as it was secured; that the Levins knew Cunningham was in dire difficulties; that Levin had threatened suit, before getting the loan; and that Levin paid no attention to the financial statement and never even looked at it. Moreover, the referee held that even though the Levins may have been involved in the deception of the bank and cooperated in presenting a false statement to the bank, that fact was immaterial to his decision. As above mentioned, the referee found that it must be assumed that Cunningham had included the real estate in his financial statement in the hope that he could secure the signature of his wife to the note; but failed in that; and regardless of whether or not Levin alone took the note and statement to the bank, Cunningham, in leaving the papers with Levin to be used to secure the loan, was guilty of procuring it on a false financial statement upon which the bank relied in making the loan.

If the Levins had been involved in the deception of the bank, then, at the present time, we are confronted with the somewhat unedifying spectacle of their appearing as creditors who secured the money as a result of such deception, objecting to the discharge of a bankrupt because he cooperated with them in getting the money for them from the bank by means of a false financial statement. From the evidence in the case, I do not believe that Cunningham deceived or defrauded either the bank or the Levins by the use of the statement. Moreover, from the evidence, I do not believe that the Levins imposed upon or deceived the bank by means of the statement. It seems to me, from the evidence, that the only reasonable conclusion is that the Levins, in order to collect the last cent of their claim from Cunningham, even though he has been adjudicated bankrupt, proceeded on the hearing to object to Cunningham's discharge on the ground that he defrauded them, and, failing in this contention, they adopted, as an afterthought, the claim that he had defrauded the bank, in order to prevent his securing a discharge.

I am of the opinion that the order denying discharge should be reversed for the reason that, in order to refuse a discharge on the ground of obtaining property on credit by a false financial statement, it must be proved that a creditor relied upon

such statement; that the evidence shows that the bank did not make the loan in question in reliance upon Cunningham's financial statement; that the specification objecting to Cunningham's discharge, which was filed by Levin, was based upon a claim that Levin was defrauded by being induced to sign a note in reliance upon a false financial statement; that the evidence shows Levin did not rely upon the statement in signing the note; that no ground of objection to a discharge will be considered other than that set forth in the specification of objection; and that since the only specification of objection is that filed by Levin claiming that he was defrauded, and such claim is without merit, the discharge should, accordingly, be granted.